### The People v. William Gordon.

*Municipal corporations—Ordinances—Removal of garbage.*

A requirement by the common council of a city that garbage shall be removed through and out of the city in water-tight, closed carts or wagons, marked "garbage," is a reasonable regulation.

*Certiorari* to recorder's court of Detroit. (Chambers, J.) Argued May 15, 1890. Decided June 6, 1890.

Respondent was convicted of violating an ordinance regulating the removal of garbage in the city of Detroit. Affirmed. The facts are stated in the opinion.

*Edwin F. Conely*, for respondent, contended:

1. To be valid, an ordinance or by-law must be strictly within the authority conferred by the charter: citing *Mayor v. Rood*, Hill

& D. 146; and it must be reasonable; citing 1 Dill. Mun. Corp. (3d ed.) § 319 (253), and cases cited in notes 1, 2; and it must not be oppressive; citing Id. § 320 (254), and cases cited in notes; and whether the ordinance is reasonable or oppressive is a question for the court; citing Id. § 327 (261), and cases cited in note; and see *In re Frazee*, 63 Mich. 396; *Chaddock v. Day*, 75 Id. 527.

*John W. McGrath, Charles W. Casgrain,* and *Charles S. McDonald,* for the people.

MORSE, J  The defendant was convicted, under an ordinance of the city of Detroit, for—

" Unlawfully and willfully engaging in collecting and removing, in an open wagon, of garbage within the city of Detroit,  *  *  *  not being authorized so to do by permit from the health officer of the city."

It is contended in his behalf that this conviction is illegal and unwarranted, because the ordinance is unreasonable, partial, and unequal in its operation, and was adopted for the purpose of creating, and does create, a monopoly. The ordinance is as follows:

"SECTION 1. It is hereby made the duty of the occupant or occupants of every dwelling-house or other building in the city of Detroit to provide a suitable and water-tight box or other vessel, of a convenient size to be handled by the garbage collector, in which said occupant or occupants shall cause to be placed or deposited all offal, garbage, and refuse, animal and vegetable matter, of the premises. Such occupants shall keep such box or other vessel at a place on the premises most accessible to the person collecting the garbage and offal, and it shall be unlawful to put any but refuse animal and vegetable matter in the vessel used for garbage and offal.

" SEC. 2. All garbage and offal shall be collected in water-tight, closed carts; and each cart shall be purified as often as the health officer may direct, and shall have painted thereon the word 'Garbage.'

" SEC. 3. No person shall engage or assist in collecting, removing, or disposing of garbage or offal within the city of Detroit except as provided in this ordinance, and

also so authorized by a permit from the health officer of the city; and it shall be unlawful for any person to interfere in any manner with the collection or disposal of garbage and offal by the person or persons authorized to do so.

"SEC. 4. It shall be the duty of any person contracting with the city for the collection or disposal of garbage to comply with the ordinances of the city, and also with such order and regulations as may be made by the board of health. Such contractor shall remove and dispose of all dead animals found within the city limits.

"SEC. 5. No person except the city contractor or his agents shall carry, convey, or transport any garbage through the streets, alleys, or public places of the city, except upon permission of the board of health; and that the common council have power, from time to time, to designate the hours during which the collection of garbage may be conducted."

Section 6 subjects offenders to punishment by fine not exceeding $25, or by imprisonment in the Detroit House of Correction not to exceed 10 days.

The charter of the city of Detroit, as amended by the Local Acts of 1889 (at page 819), empowers the common council to enact and provide, by appropriate ordinance, for the manner of collecting, transporting, conveying, and handling of garbage, and all animal and vegetable matter and refuse, in said city, and to require all persons in said city to dispose of the same in the manner provided by said common council in said ordinance for the removal and destruction thereof, and to impose and enforce appropriate penalties for any violation of said ordinance.

It is stated in the brief of respondent that this amendment was procured by a prominent citizen and ex-official of Detroit for purposes of his own private gain, and that he is now the contractor with the city for the removal of the garbage of the city, and that he has a practical monopoly of the business, out of which there is likely to come a fortune at the expense of many people who have hitherto made respectable and honest livings in the same

business. Of this, however, the record gives us no hint. It is stated in the brief of the city counselor that the city has entered into a contract for the removal of this garbage and refuse matter at an expense of $35,000 annually. But we must look at Gordon's case as it is stated in the record, and from the record it appears that he was properly and legally convicted. We do not propose to inquire into what would be the rights of the owner of the refuse matter, or any other persons, attempting to remove offal and garbage from the premises of the owner to a place outside of the city, if such owner or other person was doing so in a wagon or vehicle in conformity with the provisions of the ordinance. That question is not involved here, and it will be soon enough to discuss it when a proper case comes before us.

The evidence shows that Gordon was taking swill from the Griswold House in a light wagon, with a tight box, but uncovered, through the streets of the city, to his farm, outside the city limits. When he was in the rear of the Griswold House, a policeman saw him, and told him it was unlawful for him to remove it in that manner, and that he should make complaint against him if he took it away, but would not if he did not take it away. Gordon replied that he had bought the stuff, and wanted to feed it to his hogs, and he should take it away, and did so. Gordon testified that he was a farmer, and his business was raising hogs; that he had contracted with the proprietor of the Griswold House for the swill of the house at six dollars per month, Gordon to take it away; that he did not know that he was violating any ordinance of the city until that day when he was notified by the policeman,—the day mentioned in the warrant. The same day he went to the health officer, Dr. Duffield, for a permit, but it was refused him.

We think it competent for the common council to

prescribe, reasonably, the manner of removing garbage and offal through and out of the city, and that the requirement that such refuse shall be removed in water-tight, *closed* carts or wagons, and that the same shall be marked "Garbage," is a reasonable regulation. Gordon did not come within this regulation, and was guilty of violating the ordinance. Had he been provided with a wagon that substantially complied with section 2 of the ordinance, and had he been refused a permit by the health officer for no other reason than that he was not the city contractor, or an agent or employé of such contractor, the interesting questions so ably discussed by counsel relative to the authority of cities to virtually grant a monopoly of garbage collection and removal, or to do the whole business through their officials or contractors, would have been legitimately before us for determination. As the case stands, we decline to consider the validity of this ordinance any further than is rendered necessary by the facts in the case. In so far as Gordon transgressed it, it must be sustained. That the vehicle of transportation of this filth should be water-tight, closed, and marked so that it will be known, is, in our opinion, not only a reasonable regulation, but a judicious one, as affecting the public health.

The conviction is affirmed.

The other Justices concurred.