CITY OF GRAND RAPIDS *v.* DE VRIES.

1. MUNICIPAL CORPORATIONS — ABATEMENT OF NUISANCES — GARBAGE — WHAT CONSTITUTES — REMOVAL.

Under a city charter authorizing the common council to provide for the abatement of nuisances and the disposition of unwholesome or nauseous substances, the removal of "garbage" may be regulated by ordinance defining the term as including "every refuse accumulation of animal, fruit, or vegetable matter, liquid or otherwise, that attends the preparation, use, cooking, dealing in, or storing of meat, fish, fowl, fruit, or vegetables," since refuse accumulations of the substances enumerated are in and of themselves regarded as nuisances.

2. SAME — VALIDITY OF ORDINANCE.

A city ordinance requiring all refuse accumulations of animal, fruit, or vegetable matter to be placed in receptacles for removal by the city is not invalid on the ground that it controls the disposition of wholesome substances, without leaving the owner liberty to use or dispose of them, since the ordinance only affects discarded matter unfit for food.

3. SAME — REASONABLENESS.

A provision of a city ordinance requiring garbage to be deposited and collected in water-tight tanks and wagons, covered on top, so as to prevent the contents or odor escaping, and to be removed only by the city's licensee, is not unreasonable. *People* v. *Gordon*, 81 Mich. 306, followed.

4. SAME — MONOPOLY — POLICE POWERS.

A city ordinance providing that all garbage shall be removed, under the direction of the board of health, by some person duly licensed by the mayor upon recommendation of such board, and permitting only one such license to be issued, is not void as creating a monopoly and in restraint of trade, since the subject-matter — the gathering of garbage — is in no proper sense a trade, business, or occupation, but is a public duty, to be so discharged by the city as best to promote the public health.[1]

---

[1] As to monopoly in contract for removal of garbage, see note to *Smiley* v. *MacDonald*, (Neb.) 27 L. R. A. 540.

5. SAME—VIOLATION OF ORDINANCE—DEFENSES.

Where a city ordinance provided that no person should remove garbage except the one licensed to do so, the invalidity of the city's contract with the licensee, because for a longer term than authorized by the ordinance, was not available as a defense in a prosecution for removing garbage without a license.

Exceptions before judgment from superior court of Grand Rapids; Newnham, J. Submitted January 5, 1900. Decided April 3, 1900.

Reindert De Vries was convicted of violating an ordinance regulating the disposition of garbage. Affirmed.

*G. H. Albers* (*Taggart & Denison*, of counsel), for appellant.

*Lant K. Salsbury*, City Attorney, and *Frank W. Hine*, Assistant City Attorney (*Edwin F. Uhl* and *William Wisner Taylor*, of counsel), for the city.

LONG, J. Respondent was convicted under a complaint charging that he "did unlawfully and willfully engage in collecting and removing in open vessels and in an open wagon garbage, offal, and other refuse matter from various residences in the city of Grand Rapids, without being authorized so to do by a license for that purpose, issued by the mayor of said city; contrary to the provisions of an ordinance," etc. The cause was tried before a jury in the superior court, and a verdict of guilty found.

The ordinance under which the prosecution was had reads as follows:

"SECTION 1. The board of health of the city of Grand Rapids shall have charge, management, and control of the garbage burner or cremator owned by the city of Grand Rapids, and the regulation of the cremation of garbage and other refuse matter, and for that purpose shall have power to employ such necessary help as may be required to do the work connected therewith, at such salaries as may be fixed by the common council of the said city of Grand Rapids; and the number of such employés shall be sanctioned and determined by said common council.

"SEC. 2. It shall be unlawful for any person residing within the limits of the city of Grand Rapids or elsewhere to deposit, throw, or place any garbage, offal, or dead animals in any lane, alley, street, or other public place within the city of Grand Rapids; nor shall any person place any garbage, offal, dead animals, or other refuse matter upon any private property, whether owned by such person or not, unless the same shall be inclosed in proper vessels or tanks; such vessels or tanks to be perfectly water-tight, and so kept, with tightly-fitting covers, which covers shall not be removed except when absolutely necessary; and such vessels or tanks shall be kept in the rear of the house, or in the basement, area, or passageway, so as to be readily accessible for collection, and never upon the street, alley, sidewalk, or other public place; and all such tanks or vessels shall be promptly delivered to the collector when called for, and shall be returned by him to said place or places without unnecessary delay, and no person except for such purpose shall in any manner interfere with said vessels or tanks, or with the contents thereof: *Provided, however*, that this section shall not apply to any person who immediately destroys, by cremation or otherwise, satisfactorily to the said board of health, such garbage, offal, and refuse matter.

"SEC. 3. The words 'garbage' and 'offal' as used in this ordinance shall be held to include every refuse accumulation of animal, fruit, or vegetable matter, liquid or otherwise, that attends the preparation, use, cooking, dealing in, or storing of meat, fish, fowl, fruit, or vegetables. And it shall be unlawful for any person to place in said vessels or tanks any ashes or soil.

"SEC. 4. Said board of health is hereby authorized and empowered to enter into a contract with any suitable person or persons for the purpose of furnishing proper vessels or tanks for the reception of garbage, offal, and all other refuse matter, and for furnishing the necessary vehicles for collecting and removing the same, in the manner directed by said board. Said board of health shall have the power to make such rules, regulations, and requirements, to be contained in said contract, as said board may from time to time deem for the best interests of the city; and said board may also divide said city into convenient garbage districts, and shall have power to regulate the gathering of night-soil, and the collecting and conveying of dead animals, garbage, slops, and offal to the cremator, to be delivered at such place as may be directed by said

board. The person thus entering into a contract for the collection and removal of such garbage, offal, dead animals, and other refuse matter, as hereinbefore stated, shall, upon the recommendation of the said board of health, receive a license for that purpose, issued by the mayor of said city, and no license shall be issued to any other person, firm, or corporation for the gathering of such garbage; and such person so licensed shall give a bond to the city of Grand Rapids, with sufficient sureties and in such amount as may be required by said board of health. The condition of such bond shall be that said person so licensed shall in all things carry out the provisions of the contract thus entered into between himself and the board of health, acting for the said city, and such rules and regulations as may from time to time be made by said board of health.

"SEC. 5. The scavenger thus licensed, as hereinbefore stated, shall receive no compensation from the city of Grand Rapids, but shall be permitted to make such arrangements with the citizens of the said city in the various districts that may be established by said board of health, for the furnishing of proper vessels or tanks, at the expense of said scavenger, for the reception of garbage, and for the removal thereof from the premises of the owner or occupant of property to the cremator: *Provided, however*, that the patrons so furnishing garbage as aforesaid shall not be subjected to a weekly charge of more than ten cents for each household, and not more than one dollar a week for each hotel, restaurant, or boarding-house. And said licensed scavenger shall gather said garbage and other refuse matter, herein provided to be conveyed to the cremator, as often as the board of health shall direct.

"SEC. 6. The person so licensed and authorized as hereinbefore stated, in collecting and removing garbage and all other refuse matter as aforesaid, shall, where said vessels or tanks as hereinbefore mentioned are not capable of holding such refuse matter, provide a proper vehicle, which shall be water-tight, and kept so, and covered on top, so as to prevent the contents or any odor escaping therefrom, and, when unloaded, said box or vehicle shall be thoroughly washed and disinfected, and, when conveying said matters, shall be so loaded and removed that none of the contents shall fall upon the ground or spill therefrom; and all vehicles used for the collection of garbage shall have attached thereto on both sides a sign with the words 'Garbage Wagon' painted thereon, together with

the number of the wagon, in black letters, not less than four inches in height, on a white ground.

"Sec. 7. Any and every person or persons failing to comply with the provisions of this ordinance, or of the rules and regulations made under and by virtue of the same, shall, for every such offense, upon conviction thereof, be subject to a fine of not less than one dollar nor more that twenty-five dollars and costs of prosecution, or by imprisonment at hard labor in the common jail of the county of Kent, or in any penitentiary, jail, workhouse, or house of correction of said city, in the discretion of the court or magistrate before whom a conviction may be had, for a period of not less than five days nor more than ninety days; and in case such court or magistrate shall only impose a fine and costs, the offender may be sentenced to be imprisoned at hard labor in the common jail of Kent county, or in any penitentiary, jail, workhouse, or house of correction of said city, until the payment of such fine and costs, for a period of not less than five days nor more than ninety days.

"Sec. 8. That any ordinance or part of ordinance conflicting with the provisions of this ordinance be, and the same is hereby, repealed, so far as the same affects this ordinance."

On the trial it was shown that an agreement in writing was entered into on July 26, 1898, between the board of health of said city and one Charles E. Herrington, as follows:

"Articles of agreement, made and entered into this 26th day of July, A. D. 1898, by and between the city of Grand Rapids, a municipal corporation, of the county of Kent and State of Michigan, as party of the first part, and Charles E. Herrington, of said city of Grand Rapids, county and State aforesaid, party of the second part, as follows:

"Said party of the first part, by and through its board of health, in accordance with the provisions of an ordinance entitled 'An ordinance providing for the regulation, collection, removal, and cremation of garbage, offal, dead animals, and other refuse matter, and for the regulation of the crematory in the city of Grand Rapids,' passed July 18, 1898, hereby recommends the said party of the second part to receive a license for the purposes named in

said ordinance, and recommends that said license be issued by the mayor, in accordance with section 4 thereof; and further agrees that said party of the second part shall have the exclusive right, under this agreement and under said ordinance, to carry out in full the terms of said ordinance and the agreements herein contained.

"And said party of the first part, by and through its said board of health, hereby agrees that said party of the second part shall have such exclusive right, as hereinbefore stated, for the period of three years from and after the date hereof, and that, at the end of said period of three years, said party of the first part shall, at its option, either buy from the said party of the second part his entire outfit necessarily used by him in the carrying out of the provisions of said ordinance, at a value to be placed thereon by two disinterested persons, or shall extend the contract for a period of two years from and after said date on the same terms and conditions herein named.

"Said party of the second part, in consideration of receiving such license for the exclusive right to gather garbage, as provided for in said ordinance, and as said ordinance may from time to time be amended for the public good, agrees to procure all the necessary galvanized iron cans or receptacles, which shall be watertight, and have water-tight covers fitting thereon, and also all the necessary horses, wagons, and harnesses, tools, and other implements necessary to be used in connection with the proper gathering and conveying of garbage, night-soil, dead animals, and all other refuse matter, to the satisfaction of the said board of health; and such wagons shall be numbered, and the city may be divided into districts by said board of health; and said second party in such case agrees to furnish the number of the wagon or wagons in each of such districts to the health officer of said board of health, as the said board of health may from time to time redistrict and request.

"Said material so gathered by said second party shall be gathered as often as the board of health shall, from time to time, deem necessary for the health of the city in the different districts or parts thereof. And the receptacles or cans so furnished shall be in duplicate, and of sufficient size for use at the different places where such garbage or other refuse is taken from.

"Said party of the second part is to deliver said material so gathered at such point near the crematory as said

board of health shall designate, or at such other place as said board of health may from time to time direct, within a reasonable distance therefrom. Said party of the second part further agrees to conduct the business required by this contract in a careful manner, and observe said ordinance and all other ordinances of said city in reference to health matters, and his work shall be done to the full satisfaction of the board of health, and under the direction of the health officer of said board; and shall have an office with telephone connections.

"Said party of the second part agrees on his part not to assign or sublet this contract to any person or persons unless permitted so to do in writing by the board of health first obtained; and shall continue to perform the duties and requirements of this contract for the full term and period named herein, and to pay for all labor and material that may be necessary to carry out and fulfill the terms of this contract, and to save the city harmless from any claim for damages or costs on account of failure to fulfill any part or parcel of this contract; and further agrees for that purpose to execute and deliver to the said city of Grand Rapids a bond in the penal sum of one thousand dollars, with sufficient sureties, to be approved by the board of health, for the faithful performance of this contract."

The bond given was also put in evidence, together with the license granted by the mayor to Charles E. Herrington, dated July 29, 1898. Evidence was given tending to show the facts set forth in the complaint and warrant. After the proofs were closed, counsel moved that the complaint be dismissed and the respondent discharged.

The proofs showed that the respondent, on February 16, 1899, gathered garbage from several private residences in an open basket, and put such garbage into a sleigh, which was partly open, and so carried the same through the streets of the city; that this garbage was partially decomposed matter, and was deleterious to public health. The respondent testified that he had been in the habit of gathering garbage in the city for the last 12 years; that on the occasion shown by the people he did gather garbage, but that such garbage did not have a bad odor, and that he took it home, and fed it to his hogs. He also testi-

fied that he made application for a license to the board of
health, which was refused, and that he was at that time
told he had no right to gather garbage.   The court left it
to the jury to determine whether the articles gathered by
the respondent came within the definition of garbage men-
tioned in the ordinance.

The principal objection to the ordinance is that it is
invalid, and that the common council was not authorized,
under the charter of the city, to adopt the same.   The
charter of Grand Rapids (Act No. 374, Local Acts 1897)
provides (title 3, § 10):

"The common council ` * * * shall have power *
* * to enact * * * ordinances * * * for the
following purposes:   * * *

"*Fifth.* To abate or remove all nuisances of every
kind, and to compel the abatement and removal of the
same; to order and compel the owner or occupant of any
grocery, tallow-chandler's shop, butcher's stall or shop,
soap factory, tannery, stable, privy, water-closet, hog-
pen, sewer, or other nauseous or unwholesome house or
place, to cleanse, remove, or abate the same from time to
time, as often as the common council may deem necessary;
to direct the location of all slaughter-houses, rendering-
places, markets, and market-places; to prohibit any per-
son from bringing or depositing any dead carcass, or any
other unwholesome or nauseous substance, within the cor-
porate limits of the city; and if any person shall have on
any premises owned or occupied by him, within such
limits, any such substances, or any putrid meat, fish, hides,
or skins of any kind, which are unwholesome, nauseous,
or offensive, to order and compel the removal thereof; and,
in case of neglect or refusal of the owner or occupant of
such premises to remove or abate the same, to authorize
the removal, abatement, or destruction thereof by some
proper officer of the city.   All for the health, comfort,
safety, and convenience of said city.   * * *

"*Sixteenth.* To provide for the preservation of the
general health of the inhabitants of said city; to make
regulations to secure the same; to prevent the introduc-
tion or spreading of contagious or infectious diseases; to
prevent and suppress diseases generally; to establish a
board of health, and to prescribe and regulate its powers
and duties, subject to the provisions of this act; to regu-

123 MICH.—37.

late the burial of the dead, and to compel the return of births and deaths to be made to such board of health, and the return of all burial permits to said board; to provide for a complete record of all births, deaths, and interments, to be kept in the office of said board of health.    *    *    *

"*Eighteenth.* To pass all needful ordinances and regulations governing sextons and undertakers for burying the dead, and scavengers and chimney-sweeps, and regulating their compensation, and the fees to be paid by them for licenses:    *    *    *

"*Twenty-fifth.* To sell or otherwise provide for the disposal of all dirt, filth, manure, cleanings, and all other substances lying in or gathered from the highways, streets, avenues, lanes, courts, alleys, and public places and public grounds, to be disposed of by the city of Grand Rapids; to sell or otherwise dispose of all earth to be removed from such highways, streets, avenues, lanes, courts, alleys, public places, and public grounds of said city, in grading, paving, or otherwise improving the same."

Section 39, tit. 3, provides:

" It shall be the duty of the common council to declare any place, thing, or matter which may be deleterious to public health, or dangerous to persons or property, a public nuisance; and whenever its attention, or the attention of its proper officer or officers, is called to any such nuisance, it shall immediately proceed to abate the same.    It shall have power to pass all legal by-laws, ordinances, or regulations which, in its judgment, it may deem necessary to carry into effect the duties imposed upon it by this section."

Section 1, tit. 7, provides:

" It shall be the original duty of the common council to adopt all needful measures for the preservation of the public health of the city, and to restrain or prohibit the exercise of any nauseous or dangerous business or avocation within the corporate limits of the city.    In furtherance of such original duty, and to preserve the public health of the city, and to suppress disease therein, there shall be a board of public health in the city, to consist of three members, who shall be electors of the city."

Section 7, tit. 7, provides:

" It shall be the duty of the board of health    *    *    * to abate all nuisances of every description which are or

may become injurious to public health, in any manner it may deem expedient, and from time to time perform all acts and make all regulations which it may deem necessary for the preservation of the public health and the suppression of disease in the city, and from time to time to recommend to the common council the passage of such by-laws, ordinances, or regulations as it shall deem expedient for the preservation of the public health and the suppression of disease in the city."

It is contended that there are two reasons why the ordinance cannot be sustained under these charter provisions:

"1. That the charter power is confined to nuisances, and to substances which are actually unwholesome or nauseous; while the ordinance extends to all garbage, under the very broad definition of that term laid down in section 3, and irrespective of whether the same is a nuisance, or whether it is in fact wholesome or unwholesome.

"2. That the power conferred to remove these substances can be exercised only in case of the neglect or refusal of the householder to remove them himself; while the ordinance attempts to confer on an individual the right of immediate removal, against the protest of the householder, and without giving him an opportunity to make such removal himself; and, if construed as the city now asks, positively forbids the householder, either personally or by any one employed by him for that purpose, to remove such garbage, and subjects the householder to a penalty if he attempts immediately to remove from his premises entirely wholesome table refuse."

We think counsel are in error in both these propositions. The charter provisions empower the council to pass ordinances to regulate the collection, removal, and disposal of garbage, etc. In section 3 of the ordinance the words "garbage" and "offal" are defined to include every refuse accumulation of animal, fruit, or vegetable matter, liquid or otherwise, that attends the preparation, use, cooking, dealing in, or storing of meat, fish, fowl, fruit, or vegetables. These matters, in and of themselves, are regarded as nuisances; that is, the ordinary and accepted meaning of the words "garbage" and "offal" is such refuse matters that in and of themselves are nuisances.

As to the second proposition, it may be said that the ordinance does not attempt to regulate in any manner whatever the disposition of wholesome substances by the householder. It is aimed only at refuse; that is, discarded, worthless matter,—matter unfit for food. The householder has perfect liberty, under the ordinance, to consume, or to sell or give away, all the leavings of his table or kitchen that are fit for food; but he is not suffered by the ordinance to have around his premises, in open buckets, pans, pails, or heaps, that which is known as "refuse." Matter of this character he is required to care for by depositing the same in water-tight vessels or tanks, and dispose of it in such a way that will not endanger the public health.

But counsel say that the ordinance is unreasonable, and therefore void; and that it also creates a monopoly. The same questions were raised in *People* v. *Gordon*, 81 Mich. 306 (45 N. W. 658, 21 Am. St. Rep. 524). The charter provisions of Detroit were somewhat similar to the charter of Grand Rapids, above quoted. Those provisions empowered the common council of Detroit to enact and provide by ordinance for the manner of collecting, transporting, and conveying of garbage and all animal and vegetable matter and refuse in said city, and to require all persons to dispose of the same in the manner provided by the common council in said ordinance for the removal and destruction thereof, and to impose penalties for the violation of the same. The ordinance there provided for the collection of garbage in water-tight vessels, the same as the ordinance in controversy. It also provided that no person except the city contractor or his agents should carry or transport garbage through the streets or public places. It was contended that this ordinance was unreasonable. It was said:

"We think it competent for the common council to prescribe reasonably the manner of removing garbage and offal through and out of the city, and that the requirement that such refuse shall be removed in water-tight

closed carts or wagons, and that the same shall be marked 'Garbage,' is a reasonable regulation. Gordon did not come within this regulation, and was guilty of violating the ordinance. Had he been provided with a wagon that substantially complied with section 2 of the ordinance, and had he been refused a permit by the health officer for no other reason than that he was not the city contractor, or an agent or employé of such contractor, the interesting questions, so ably discussed by counsel, relative to the authority of cities to virtually grant a monopoly of garbage collection and removal, or to do the whole business through their officials or contractors, would have been legitimately before us for determination."

In the present case we think the ordinance is not unreasonable as to the manner of gathering and removing garbage. That question is ruled by *People* v. *Gordon,* *supra.*

The charter does not, in express terms, empower the council to grant an exclusive contract. It is contended by counsel for respondent that it is the settled rule of charter construction in this State that, even though a city charter may give the council power of general control over a subject, yet the council cannot make an exclusive contract for a period of years, relating to that subject, unless such power to make an exclusive contract is stated by the charter in express terms; in other words, that the power to make an exclusive contract will not be implied. In support of this proposition, counsel cite *Grand Rapids Electric Light & Power Co.* v. *Grand Rapids Edison Electric Light & Fuel Gas Co.,* 33 Fed. 659. The question of the granting of the exclusive use of the streets of Grand Rapids to the electric-light company was very fully discussed by Mr. Justice Jackson in that case, and he states the well-settled doctrine that municipal corporations, which are mere political agencies of government, forming but parts of the machinery employed in carrying on the affairs of state, possess and can exercise only such powers as are granted in express words, or those necessarily or fairly implied in or incident to the powers expressly conferred, or those essential to the declared objects and pur-

poses of the corporation; not simply convenient, but indispensable. Applying this rule to the ordinance there under consideration, he held that there was no express power given by the charter by which the common council of Grand Rapids could confer upon the Grand Rapids Electric Light & Power Company the exclusive use of the streets for 15 years. The learned judge said in that case:

"I cannot discover, in the decisions of the Michigan Supreme Court, any general policy of the State in respect to municipalities and their powers which may be legitimately invoked in support of the validity of the ordinance of 1880, so far as it attempts to grant the exclusive use of the city's streets to complainant for the purposes aforesaid."

We think that case is not controlling of the present. The gathering of garbage is not a trade, business, or occupation in any proper sense, and such employment does not come under the doctrine in reference to monopolies, or in reference to legislation in restraint of trade. It is a matter in which the public agencies are authorized to pursue the best means to protect the public health. The charter provisions recognize the fact that certain matter may be deleterious to public health, and dangerous to persons or property, and thus become a public nuisance; and the charter makes it the duty of the common council to declare any place, thing, or matter which may be deleterious to public health, or dangerous to persons or property, a public nuisance, and the council is given power to abate such nuisance. The ordinance treats garbage or offal as deleterious to public health, and directs the manner of its disposition for the benefit of the public health. It is one of the police regulations of the city for the benefit of the public health.

Whether or not the contract with Herrington be invalid for the reason that it is for a longer period than one year is of no importance here. The ordinance itself does not attempt to provide that the board of health may enter into a contract for a longer period than one year. It is true

that the board attempted to do so by providing that Herrington should have the exclusive right for the period of three years, with the option of two more years, the license to be issued from year to year; but whether the contract be valid or not cannot affect the rights of the respondent. He was acting without a license, and at a time when there was a duly-licensed person to do the work.

The respondent asserts that the ordinance does not license or control, but prohibits, what he denominates a lawful and proper business. The business of handling and carting garbage through the public streets of a city is a business which the municipality may regulate for the benefit of the public health. No person has the right to carry garbage or other refuse matter through the streets of a city in open vessels. It is not the creation of a monopoly when the city from year to year licenses one or more persons to cart such garbage from and out of the city, specifying the manner in which it shall be done. In *River Rendering Co.* v. *Behr,* 7 Mo. App. 345, the ordinance under consideration was in reference to the removal of dead animals. The court, speaking of that ordinance, said:

"The city authorities would be grossly derelict if they left the chances of removal to be determined by the owners of the animals, or by the enterprise of possible purchasers. They are in duty bound to appoint special agencies for the purpose, and to render performance certain by whatever means their best judgment may suggest. If they find that this certainty can be secured only by confining the agency to a single person or corporation, upon terms of responsibility for a failure to perform, it is their duty and their privilege to so secure it. The agency so appointed is rather the instrument in the hands of the municipal authorities for the fulfillment of a public duty than the beneficiary of an exclusive privilege."

We think the ordinance a valid one, and the conviction must be affirmed.

The other Justices concurred.