BOARD OF HEALTH OF THE CITY OF GRAND RAPIDS *v.*
VINK.

1. MUNICIPAL CORPORATIONS — INJUNCTION—EQUITY—ORDINANCE—
    ENFORCEMENT—GARBAGE COLLECTION.

> Under an ordinance of the city of Grand Rapids providing
> for the collection of garbage and authorizing the board
> of health to direct the manner of removal and regulate
> the collection of substances of such nature and providing
> that any person entering into a contract with the mu-
> nicipality for the collection and removal of garbage, offal,
> etc., shall obtain a license and give a bond with sufficient
> sureties for an amount required by the board of health,
> also prohibiting any others from engaging in the work
> of collecting and conveying garbage through the streets
> of said city under penalty of a fine of not more than $25,
> a bill in equity for an injunction might be maintained
> by a municipal corporation to prohibit an unlicensed
> individual from attempting to remove garbage, where
> the city had entered into a contract for the disposal of
> the garbage whereby the municipality was to collect and
> deliver the same at fifty cents per ton.

2. SAME—GARBAGE COLLECTION—CONSTITUTIONAL LAW.

> The right of a city in exercising its police power to regu-
> late by ordinance the disposal of garbage is beyond ques-
> tion in this State.[1]

3. SAME—CRIMINAL PROVISIONS—EQUITY—INJUNCTION.

> The existence of a penal provision in the ordinance did
> not have the effect of ousting the chancery court of juris-
> diction, although in many instances courts of equity will
> not interfere to enjoin the breach of a penal ordinance.

4. SAME.

> Provisions of a municipal ordinance for the removal of
> garbage and for the payment of a stated amount to the
> persons so removing the garbage vested in the city a
> financial interest which warranted its action in filing a
> bill of complaint: nor could prosecution under the penal

[1] Upon the power of a municipal corporation to grant the
exclusive right or create a monopoly for the removal of garbage,
see note in 21 L. R. A. (N. S.) 830.

provisions of such ordinance be said to afford an adequate remedy to the municipality.

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted January 14, 1915. (Docket No. 86.) Decided March 18, 1915.

Appeal by the board of health of the city of Grand Rapids against Benjamin Vink to restrain the defendant from removing and disposing of garbage under an ordinance of the city of Grand Rapids. From a decree for the complainant, defendant appeals. Affirmed.

*Hatch, McAllister & Raymond,* for appellant.

*R. M. Ferguson,* for appellee.

BROOKE, C. J. The bill of complaint in this case is filed by the board of health of the city of Grand Rapids against Benjamin Vink for the purpose of enjoining said Vink from engaging in the business of a scavenger in the city of Grand Rapids and—

"from the removing of garbage, and such garbage as is described herein in this bill of complaint and from in any manner violating the said ordinances or amendments thereof."

It appears that the city of Grand Rapids, on the 18th day of July, 1898, passed an ordinance, which was amended on April 28, 1904, relative to the regulation, collection, removal, and cremation of garbage, etc. This ordinance authorized the board of health to enter into a contract with a suitable person—

"for the purpose of furnishing proper vessels or tanks for the reception of garbage, offal and all other unsanitary matter, and for furnishing the necessary vehicles for collecting and removing the same in the manner directed by said board, or the said city of Grand Rapids, or said board of health under the rules and regulations of said board may collect the garbage, offal and all other unsanitary matter, or collect and

184 Mich.—44.

dispose of such substances. Such board of health shall have the power to make such rules, regulations and requirements as said board may from time to time deem for the best interests of the city; and said board may also divide said city into garbage districts, and shall have power to regulate the gathering of night soil and the collecting and conveying of dead animals, garbage, slop and offal to the crematory or other place or places as may be directed by the said board. The person entering into a contract for the collection of and removal of such garbage, offal, dead animals and other unsanitary matter, as hereinbefore stated, shall, upon the recommendation of the said board of health, receive a license for that purpose, issued by the mayor of said city and no license shall be issued to any other person, firm or corporation for the gathering of such garbage; such person so licensed shall give a bond to the city of Grand Rapids, with sufficient sureties and in such amount as may be required by said board of health.   *   *   *   No person, firm or corporation excepting the city of Grand Rapids, shall collect or convey through the streets of said city any garbage, offal, dead animals or other unsanitary matter, unless he, they or it shall have first received a license therefor issued by said city and execute a bond as required by this ordinance."

Section 7 of said ordinance provides that upon the conviction of, and failure to comply with, the conditions of the ordinance, the offending person may be—

"subject to a fine of not less than $1.00 nor more than $25.00 and costs of prosecution, or by imprisonment at hard labor in the common jail of the county of Kent, or in any penitentiary, jail, workhouse or house of correction of said city, in the discretion of the court or magistrate before whom a conviction may be had, for a period of not less than five days nor more than ninety days."

On February 10, 1913, the city of Grand Rapids entered into a contract with the Grand Rapids Garbage Holding Company, of Grand Rapids, Mich., by the terms of which the city undertook the task of the collection of all the garbage and the delivery of the

same upon cars at a point certain within the city of
Grand Rapids. The cars were to be furnished by the
city, but were to be kept in repair by the Garbage
Holding Company. It was further provided that the
delivery of the garbage should be made by and under
the management of the board of health of the city of
Grand Rapids or such branch of the city government
as may be provided by charter. The contract further
provided that the Garbage Holding Company should
receive and dispose of the garbage in a certain speci-
fied manner, and—

"in consideration of the delivery of such substances
by the said party of the first part to said second party,
said second party hereby agrees to pay to said party
of the first part fifty (50) cents per ton, payable
monthly, during the time that this contract shall be
in force."

Further:

."Said first party hereby agrees to diligently prose-
cute all persons unlawfully collecting or removing gar-
bage within said city of Grand Rapids at any and all
times, and particularly upon thirty days' notice by said
second party to said first party, in writing, or any
person unlawfully collecting or removing garbage
within said city."

Further:

"Said first party hereby agrees that if the quality
or quantity of garbage within said city, is at any time
during the life of this contract, materially reduced by
unlawful collection or removal, to proportionately re-
duce the price per ton of said garbage to be paid by
said second party to said first party hereunder, while
said reduction in quality or quantity continues."

The bill sets out the ordinance and contract, and
avers that the defendant, without license, proceeded
upon a day certain to collect garbage from certain
hotels, boarding houses, and other places contrary to
the provisions of said ordinance. It describes the
character of the refuse, and states:

"That the material being placed in said vessels and barrel consisted of tomatoes, bread, cooked meat, lemon and grapefruit peels, onions, clamshells, celery, beans (cooked), eggshells, cabbage, etc., all in a mushy and wet condition; that it was refuse and waste matter such as comes from tables and a kitchen; that it was of the nature of swill; that it had in part undergone process of fermentation and gave forth an odor very strong and disagreeable and injurious to the public health. * * * And your orator further shows and states the fact to be that the removal of garbage in this manner is a violation of the city ordinance, and that the removal of garbage of this character is injurious and dangerous to the public health, and should be restrained by the injunction and order of the courts; that the continuation of such removal of garbage in vessels of this character violates and sets at naught the costly methods of removal of garbage by city officials and endangers the public health and is a standing menace to the best efforts of the city, constituting damage not only in hundreds of dollars, but probably thousands of dollars, that cannot well be measured."

To this bill of complaint the defendant filed an answer admitting the fact that he had collected the garbage without a license, but denied that the matter collected had in part, or at all, begun fermentation, or that it gave forth a bad or disagreeable odor, or that it was in any way injurious to the public health. He further averred that the method employed by him for the removal of said material was more sanitary and more satisfactory to the owners of said material than the method employed by the city.

The cause was heard in open court, and evidence introduced on behalf of the complainant tending to show that upon the day in question the defendant was engaged in collecting garbage in said city. Upon the particular occasion in question the defendant had upon his wagon some eight or nine cans and one barrel, filled or partially filled with garbage. The substance was described by one witness "as soft and mushy like."

"*Q.* Whether any of those cans or the barrel was tightly closed with tight covers?

"*A.* I don't think there was one of them had a lid on that morning.

"*Q.* Whether or not you are positive that there were some cans, or the barrel, that had garbage in it as you have described it that did not have a tight cover?

"*A.* Yes, sir.

"*Q.* You are positive of that, are you?

"*A.* Yes, sir.

"*Q.* What have you to say in reference to the cleanliness of this barrel and cans; whether or not there was any odor?

"*A.* Well, there was some odor from them.

"*Q.* Was it a good odor?

"*A.* Pretty fair.

"*Q.* What have you to say in reference to the odor?

"*A.* There was a bad smell to it—sour.

"*Q.* Disagreeable, was it?

"*A.* A sour, disagreeable smell to it; yes.

"*Q.* What have you to say in reference to the cleanliness of the barrel and cans?

"*A.* They were not very clean—more or less greasy.

"*Q.* On the outside?

"*A.* The outside and inside, too.

"*Q.* Greasy and dirty from the garbage that had been thrown upon them?

"*A.* Grease and dust had settled on them."

A decree passed as prayed for by the complainant perpetually enjoining the defendant from engaging in the business of a scavenger and from the removing of garbage and of such garbage as is described, and from in any manner violating the ordinances of the city of Grand Rapids with reference to garbage or removal thereof.

The right of a city, in the reasonable exercise of its police power, to enact an ordinance covering the collection and disposal of garbage is not, as we understand it, questioned by counsel for appellant. Indeed, in view of the decisions of this and other courts, such right could not well be questioned. *People* v. *Gardner*, 136 Mich. 693 (100 N. W. 126); *Id.*, 143 Mich. 104

(106 N. W. 541); *Gardner* v. *Michigan,* 199 U. S. 325, 26 Sup. Ct. 106.

On behalf of appellant, however, it is strenuously contended that a court of equity is without jurisdiction to entertain the bill in this case for the purpose of enjoining a breach of a municipal ordinance. Many cases are cited in support of this position, and, among them, the following: *Village of St. Johns* v. *McFarlan,* 33 Mich. 72 (20 Am. Rep. 671); *City of Grand Rapids* v. *De Vries,* 123 Mich. 570 (82 N. W. 269); *Micks* v. *Mason,* 145 Mich. 212 (108 N. W. 707, 11 L. R. A. [N. S.] 653, 9 Am. & Eng. Ann. Cas. 291); *Dequeen* v. *Fenton,* 98 Ark. 521; *Lyric Theater* v. *State,* 98 Ark. 437 (136 S. W. 174, 33 L. R. A. [N. S.] 325); *Mayor* v. *Thorne,* 7 Paige (N. Y.), 261; *Davis* v. *American Society, etc.,* 75 N. Y. 362; *Village of New Rochelle* v. *Lang,* 75 Hun (N. Y.), 608 (27 N. Y. Supp. 600); *Mayor* v. *Smyth,* 64 N. H. 380 (10 Atl. 700); *Rochester* v. *Walters,* 27 Ind. App. 194 (60 N. E. 1101); *Waupun* v. *Moore,* 34 Wis. 450 (17 Am. Rep. 446); and *Houlton* v. *Titcomb,* 102 Me. 272 (66 Atl. 733, 10 L. R. A. [N. S.] 580, 120 Am. St. Rep. 492). Many other cases are cited, but the foregoing will be found sufficient to demonstrate the fact that *usually* courts of equity will not interfere and enjoin the breach of a penal ordinance. Most of the cases cited, however, will be found on examination to refer to ordinances prohibiting the erection of buildings of a certain character within certain prescribed fire limits. The fact is emphasized in many of the decisions that the erection of such a structure is not in itself a nuisance, and, as was said in the case of *Mayor* v. *Thorne, supra:*

"It is no part of the business of this court [chancery] to enforce the penal laws of the State, or the by-laws of a corporation, by injunction, unless the act sought to be restrained is a nuisance."

Counsel for appellant cite and rely on the case of *Micks* v. *Mason,* 145 Mich. 212 (108 N. W. 707, 11 L. R. A. [N. S.] 653, 9 Am. & Eng. Ann. Cas. 291). In that case the complainants sought to restrain the municipal authorities from razing a building said to have been erected by complainants in defiance of a municipal ordinance, which declared that a building erected in defiance of its terms should be deemed a nuisance. The bill was dismissed. We are unable to see how the conclusion reached in that case has any bearing upon the question presented in the case at bar, where the bill is filed by the municipality itself, or one of its boards, to enjoin a course of conduct on the part of the defendant which it is charged not only resulted in a public nuisance, but entailed upon the city considerable financial loss through its failure to secure, deliver, and receive pay for the garbage so unlawfully collected by the appellant.

In the case of *Detroit Realty Co.* v. *Barnett,* 156 Mich. 385 (120 N. W. 804, 21 L. R. A. [N. S.] 585), this court held that equity has jurisdiction to abate a saloon, if a private nuisance, although the nuisance is also a breach of the criminal law, citing cases. Very lately, in the case of *Detroit Building Commission* v. *Kunin,* 181 Mich. 604 (148 N. W. 207), the equitable jurisdiction of the court was invoked to enjoin a threatened violation of a municipal ordinance relating to the erection of a building. We there held that, though the ordinance did not in terms declare a building erected in violation of its provisions a nuisance, by virtue of the provision in the ordinance providing for injunctive relief, the court would exercise equity jurisdiction.

A case upon its facts very much like the case at bar is that of *California Reduction Company* v. *Sanitary Works,* 199 U. S. 306, 26 Sup. Ct. 100. In that case the board of supervisors of the city and county of San

Francisco had adopted an ordinance by the terms of which they had given to the assignor of the complainant company an exclusive right for 50 years to collect, cremate, and destroy within that city all garbage. A part of that ordinance consisted in a penal clause declaring any violation thereof punishable by a fine of not exceeding $250, or by imprisonment for a term not exceeding 100 days. The bill was filed by the complainant for the purpose of obtaining a decree restraining the defendants by injunction from removing from said city any of the garbage or other material specified in the ordinance. The circuit court, Judge Morrow presiding, passed a decree giving the relief asked. 94 Fed. 693. That decree was affirmed in the circuit court of appeals, Judge Hawley delivering the opinion of the court. 126 Fed. 29, 61 C. C. A. 91. It was removed to the Supreme Court of the United States, and the opinion, which reviews all the authorities extending up to 1905, when it was written by Mr. Justice Harlan, affirms the decree of the lower court.

In the case of *In re Debs*, 158 U. S. 564, 15 Sup. Ct. 900, injunctive relief was given. The following headnotes indicate the holding of the opinion:

"A court of equity has power to interfere by injunction in cases of public nuisance.

"The jurisdiction of a court of equity to enjoin interferences with property rights is not destroyed by the fact that they are accompanied by or are violations of the criminal law."

In the case at bar the averments of the bill, without using the word "nuisance," set out facts which, if proven, would be sufficient upon which to predicate a finding that the method of collection adopted by the appellant was in itself such as to constitute a public nuisance. The evidence as to that method is quoted *supra*. It is claimed on behalf of appellant that his method was quite as sanitary and free from objection

as that adopted by the city.  We think, however, that even if this be true, it is no answer to the charge that appellant was creating a nuisance.  All authorities agree in holding that garbage in and of itself is a nuisance, and all agree that, in the exercise of the police power, a municipality may control the manner of its collection and disposition.  It is obviously for the interests of the whole public that such offensive offal should be collected by persons under the immediate control of the municipal authorities, and this control the ordinance in question seeks to preserve.

The record discloses the fact that, besides defendant and appellant, several others in the city of Grand Rapids were engaged in an enterprise similar to his own.  The difficulty of maintaining a constant surveillance over unlicensed and irresponsible collectors must be obvious to all.  It is perhaps, however, not necessary to base determination upon this phase of the case.  The bill avers, and the evidence shows, that the city had a direct financial interest in the garbage in question.  Its right to compel delivery thereof to its own collectors and to receive pay therefor from the Garbage Holding Company cannot be questioned. The activity of the appellant and others in collecting the garbage prevented the city from receiving the agreed price for so much thereof as appellant and the other unlicensed collectors secured.  It is easy to believe that the continued collection of garbage by appellant and others might so reduce the amount collected by the city and delivered to the Garbage Holding Company under its contract as to render it impossible for the contract to receive practical performance.  Nor can it be said that a prosecution under the penal clause of the ordinance would afford the city an adequate remedy.  The offending party is entitled to appeal after conviction from court to court and thus cause delay.  In the meantime the city is subjected to

the loss of the material which, though not property in an ordinary sense, has under the contract between the city and the Garbage Holding Company, a certain fixed value determined by that contract.

For both reasons stated, we are of opinion that the decree of the court below perpetually enjoining defendant from collecting garbage within the city of Grand Rapids should be, and it is, affirmed.

McALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.