PENINSULA SANITATION, INC v CITY OF MANISTIQUE

Docket No. 160365. Submitted May 10, 1994, at Marquette. Decided
December 6, 1994, at 9:25 A.M.

Peninsula Sanitation, Inc., brought an action in the Schoolcraft
Circuit Court against the City of Manistique and certain town-
ships within Schoolcraft County, seeking, on the basis of· a
violation of due process, injunctive and declaratory relief with
regard to solid waste collection contracts that the defendants
had entered into with one of the plaintiff's competitors. The
defendants had combined certain of their functions to establish
the Schoolcraft County Department of Public Works (DPW),
which had formulated a plan and solicited competitive bids for
a contractor to collect residential and commercial solid waste
pursuant to the plan. Manistique Rentals, Inc. (MRI), had been
awarded a contract granting it the exclusive right to collect
solid waste within the member municipalities. The municipali-
ties then each had adopted ordinances supporting the agree-
ment with MRI. The court, Charles H. Stark, J., ruled that the
bidding process for the contract and the exclusive waste collec-
tion agreements were reasonably related to the ends sought to
be accomplished by the municipalities in the exercise of their
police powers, so that no due process violation occurred. The
court granted the defendants' counterclaim for injunctive relief,
enjoining the plaintiff from collecting Type II waste from the
residents of the defendant municipalities in violation of the
exclusivity provisions of the agreements and ordinances. The
plaintiff appealed.

The Court of Appeals *held:*

1. The court properly found that no due process violation
occurred. The ordinances involved are rationally related to a
legitimate governmental purpose, the collection and lawful
disposal of solid waste. Considerations of public health provide
sufficient justification for granting an exclusive contract for the
collection of solid waste.

2. The trial court did not abuse its discretion in enjoining the

REFERENCES

Am Jur 2d, Constitutional Law §§ 212, 216, 251, 252, 403, 417, 424,
427, 431; Injunctions §§ 26, 31, 39, 48, 158, 160, 163.
See ALR Index under Constitutional Law; Injunctions.

plaintiff from collecting Type II solid waste within the defendant municipalities.

Affirmed.

1. Constitutional Law — Municipal Corporations — Ordinances.

Ordinances are presumed to be valid and courts have a duty to construe an ordinance as being constitutional, unless it is clearly apparent that the ordinance is unconstitutional.

2. Constitutional Law — Municipal Corporations — Ordinances.

A party challenging the constitutionality of an ordinance has the burden of proving the invalidity of the ordinance; where the legislative judgment is supported by any facts either known or that reasonably could be assumed, although such facts may be debatable, the legislative judgment must be accepted.

3. Constitutional Law — Due Process — Municipal Corporations — Ordinances.

In analyzing a plaintiff's claim that an ordinance of a municipality interferes with its business in violation of the constitutional guarantee of due process, the ordinance will be found to comport with due process where it is rationally related to a legitimate governmental purpose.

4. Municipal Corporations — Contracts — Disposal of Solid Waste — Public Health — Police Powers.

Considerations of public health provide sufficient justification for a municipality's granting of an exclusive contract for the collection of solid waste; waste collection is an aspect of the police power of a municipality that concerns the legitimate goal of ensuring the proper disposition of solid waste.

5. Injunctions — Prerequisites.

There are three prerequisites to obtaining injunctive relief: justice must require that the court grant the injunction, there must be no adequate remedy at law, and there must be a real and imminent danger of irreparable injury.

*Steward, Peterson, Sheridan & Nancarrow* (by *Paul A. Peterson*), for the plaintiff.

*Davis, Olsen, Filoramo, Jarvi & McNamara, P.C.* (by *John R. Filoramo*), for the City of Manistique and the Townships of Doyle, Hiawatha, Inwood, Manistique, and Thompson.

*Peter J. Hollenbeck,* Schoolcraft County Attorney, for the Schoolcraft County Department of Public Works.

Before: MacKenzie, P.J., and Neff and R. L. Olzark,* JJ.

Per Curiam. Plaintiff appeals as of right from a judgment enjoining it from conducting its solid waste collection business within the defendant municipalities in violation of an agreement between the municipalities and defendant Manistique Rentals, Inc. (MRI). We affirm.

On May 3, 1992, the landfill used by residents of Schoolcraft County was closed by the Michigan Department of Natural Resources. Before the closure, the defendant municipalities had combined certain of their functions to establish the Schoolcraft County Department of Public Works (DPW). The DPW was responsible for developing a new county-wide solid waste disposal plan and administering the plan once the landfill was closed.

Defendant DPW held public meetings to formulate its waste disposal plan, and in April 1992, it solicited competitive bids for a contractor to collect residential and commercial solid waste pursuant to the plan. The bid specifications indicated that the successful bidder would serve all residents of the county and would pay the DPW a fee of 1⅔ cents for each pound of garbage hauled. The DPW ultimately received two bids, one of which was untimely, for the solid waste collection contract. Defendant MRI's timely bid was accepted.

Defendants then executed two contracts, entitled "Schoolcraft County-Wide Residential Solid Waste Agreement" and "Schoolcraft County-Wide Commercial Solid Waste Agreement," granting MRI the

* Circuit judge, sitting on the Court of Appeals by assignment.

exclusive right to collect solid waste within the municipalities, effective May 4, 1992. Both agreements provided in relevant part:

> 19. *Exclusivity:* This agreement grants. Contractor the sole and exclusive right and responsibility to collect all Type 2 solid waste generated within each of the respective municipalities. which are parties to this agreement, during the term hereof, including any extensions, and each such municipality agrees to take such action as is necessary and permitted by law to prevent or enjoin any third party from collecting Type 2 refuse within its boundaries, during the term of this agreement or any extension thereof, subject, however, to the provisions of paragraph 16 of this agreement.

Paragraph 16 provided that the agreements would not interfere with or void any "valid contract, executed prior to the execution of this agreement" for solid waste removal between a hauler and residents of Schoolcraft County.

The defendant municipalities subsequently each adopted ordinances in conjunction with the agreements making it unlawful for any person or business, other than the contractor under the solid waste collection contract, to collect waste within the municipalities. The ordinances also reserved the municipalities' right to seek injunctive relief to compel compliance with the ordinances.

Plaintiff is another company engaged in the business of solid waste collection. It also had commercial and residential customers within the defendant municipalities. Although plaintiff was aware in March 1992 that defendant DPW was soliciting competitive bids for a solid waste collection contractor, plaintiff never submitted a bid for the contract.

After the solid waste collection contract was

awarded to MRI, plaintiff brought this action for declaratory and injunctive relief. As relevant to this appeal, plaintiff asserted that the exclusive nature of defendants' waste collection agreements and the supporting ordinances were in violation of the state and federal Due Process Clauses, Const 1963, art 1, § 17; US Const, Am XIV. Defendants counterclaimed, seeking injunctive relief and alleging that plaintiff was collecting Type II solid waste in the defendant municipalities contrary to the ordinances.

Following a bench trial, the court ruled that the bidding process and the exclusive waste collection agreements were reasonably related to the ends sought to be accomplished by the municipalities in the exercise of their police powers, so that no due process violation occurred. Additionally, the court enjoined plaintiff from violating the exclusivity provisions of the solid waste agreements and the supporting ordinances by collecting Type II waste from residents of the defendant municipalities.

On appeal, plaintiff contends that the trial court erred in failing to conclude that the exclusive waste collection contracts and the supporting ordinances constituted a violation of due process. We disagree.

Ordinances are presumed valid. *Detroit v Qualls,* 434 Mich 340, 364; 454 NW2d 374 (1990). The courts have a duty to construe them as constitutional, unless unconstitutionality is clearly apparent. *Ullery v Sobie,* 196 Mich App 76, 79; 492 NW2d 739 (1992). Where the legislative judgment is supported by any facts either known or that reasonably could be assumed, although such facts may be debatable, the legislative judgment must be accepted. *Katt v Ins Bureau,* 200 Mich App 648, 651-652; 505 NW2d 37 (1993), citing *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW

608 (1936), and *Shavers v Attorney General,* 402 Mich 554, 612; 267 NW2d 72 (1978). The party challenging an ordinance's constitutionality has the burden of proving its invalidity. *Qualls, supra,* p 364.

In analyzing claims involving due process challenges to ordinances, courts first determine the type of matters to which the governmental action relates. *Id.,* p 365. When the action relates to matters of economics or general social welfare, the test to determine whether the law comports with due process is whether it bears a reasonable relation to a legitimate governmental purpose. *Id.* See also *Shavers, supra,* pp 612-614. Here, plaintiff's claim is that the municipalities' ordinances interfere with its business. Thus, the ordinances need only rationally relate to a legitimate governmental purpose. *Qualls, supra.*

It is essentially undisputed by the parties that the collection and lawful disposal of solid waste is an aspect of the police powers of defendants DPW and the municipalities, and that the ordinances address a legitimate governmental purpose. The Solid Waste Management Act, MCL 299.401 *et seq.*; MSA 13.29(1) *et seq.,* for example, mandates that municipalities and counties "shall assure that all solid waste is removed from the site of generation frequently enough to protect the public health, and is delivered to licensed disposal areas." MCL 299.424(1); MSA 13.29(24)(1). The act also requires each county to prepare a solid waste management plan that includes "an enforceable program and process to assure that the nonhazardous solid waste generated" in the county "is collected and . . . disposed of" at appropriate disposal sites. MCL 299.425(1); MSA 13.29(25)(1). County departments of public works are authorized to contract for the acquisition, improvement,

enlargement, or extension of a refuse system. MCL 123.742(1); MSA 5.570(12)(1). Further, municipalities are authorized to take bids and "enter into a contract with 1 or more" of the bidding parties for waste collection, transportation, and disposal. MCL 123.314(1); MSA 5.2725(14)(1).

Furthermore, the overwhelming weight of authority is that considerations of public health provide sufficient justification for granting an exclusive contract for the collection of solid waste. See anno: *Regulation and licensing of private garbage or rubbish removal services,* 83 ALR2d 799. As stated in 56 Am Jur 2d, Municipal Corporations, § 462, pp 512-513:

> In order to effectuate the disposal of garbage, private collectors of garbage are frequently designated by municipalities. Ordinances have been repeatedly upheld which prohibit collection, handling, transportation, and disposal of garbage except by certain designated scavengers under supervision or control of, or under contract with, the municipalities, notwithstanding that such course of activity, among other consequences, may result in . . . destroying the means of livelihood of other scavengers.
>
> *No constitutional interference with private property rights . . . results from ordinances which create exclusive scavenger rights . . . which forbid the collection, handling, transportation, or disposal of the garbage by other than such licensed collector.* In most of the cases, such ordinances have been sustained as against contentions that they were unreasonable. Also, in practically all the cases in which the objection was raised that an exclusive license constituted an invalid monopoly in restraint of trade . . . the courts have decided against such contentions on the ground that the exclusive privilege had been granted within the discretion allowed to the municipality under its police power to protect the health of its residents,

which it could do more efficiently by controlling one or a few scavengers. [Emphasis added].

According to 7 McQuillin, Municipal Corporations (3d ed), § 24.251, p 140:

Generally a municipal corporation can contract with one or more persons or corporations for the collection and removal of waste . . . . *It may grant an exclusive privilege to a contractor or licensee to make such collection and removal for a specified period.* Removal of substances of this character must proceed quickly . . . . *Accordingly, an exclusive contract for the removal of these substances constitutes a proper exercise of the police power.* [Emphasis added.]

9 McQuillin, Municipal Corporations (3d ed), § 26.135, p 408 also provides:

*Licenses or permits [to collect garbage] may be limited in number or made exclusive in order to promote efficiency in the removal of these waste products and in order to make police regulation more concentrated and effective.* No unlawful restraint of trade ensues as a consequence of thus limiting persons engaged in this activity, since it is primarily governmental in nature and object, although private enterprise is utilized in performing it. [Emphasis added].

All of these treatises cite Michigan cases addressing various unsuccessful challenges to municipal ordinances and contracts granting exclusive refuse hauling rights to private companies. In *People v Gordon,* 81 Mich 306, 308-310; 45 NW 658 (1890), our Supreme Court held that the City of Detroit could enjoin a trash collector without a permit from transporting garbage in an unauthorized wagon, given the best interests of the public

health. In *Grand Rapids v De Vries,* 123 Mich 570, 582-583; 82 NW 269 (1900), the Court found that an ordinance granting one company an exclusive contract to haul garbage was not unreasonable and did not create a monopoly. In *Grand Rapids Bd of Health v Vink,* 184 Mich 688, 696-698; 151 NW 672 (1915), the Supreme Court upheld a permanent injunction preventing the defendant from collecting and removing garbage because the defendant's collection efforts would render an exclusive refuse hauling contract incapable of performance.

Finally, the United States Supreme Court in *Gardner v Michigan,* 199 US 325, 328-332; 26 S Ct 106; 50 L Ed 212 (1905), upheld a City of Detroit ordinance that granted an exclusive right to one city contractor for collecting and disposing of garbage. The Court found that the ordinance's exclusive service provisions were both reasonable and necessary and had a substantial relation to protecting the public. See also *California Reduction Co v Sanitary Reduction Works of San Francisco,* 199 US 306, 318-325; 26 S Ct 100; 50 L Ed 204 (1905).

More recently, other states have addressed the issue and found that municipalities have the right to grant exclusive contracts for hauling garbage. See *City of Tigard v Werner,* 15 Or App 335, 337-339; 515 P2d 934 (1973); *Troje v City Council of City of Hastings,* 310 Minn 183, 184-189; 245 NW2d 596 (1976); *Strub v Village of Deerfield,* 19 Ill 2d 401; 167 NE2d 178 (1960).

On the basis of these authorities, we conclude that defendants' exclusive contracts for county-wide solid waste collection, and the ordinances supporting the exclusive contracts, are rationally related to a legitimate objective and therefore are not violative of due process. As noted above, waste

collection is an aspect of the municipalities' police power and concerns the legitimate goal of ensuring the proper disposition of solid waste. The ordinances bear a reasonable relationship to preserving the public health because they ensure efficient handling and disposal of garbage by making it easy for the defendant municipalities to regulate and oversee defendant MRI, which must make financial contributions to assist in the operation of the new landfill and in closing the old one. See *Qualls, supra,* p 365; *Strub, supra,* pp 402-406. Accordingly, we find no due process violation.

Plaintiff further challenges the trial court's decision to enjoin it from collecting Type II solid waste within the defendant municipalities. This claim is also without merit.

There are three prerequisites to obtaining injunctive relief: (1) justice must require that the court grant the injunction, (2) there must be no adequate remedy at law, and (3) there must be a real and imminent danger of irreparable injury. *In re Martin,* 200 Mich App 703, 723; 504 NW2d 917 (1993); *Azzar v Primebank, FSB,* 198 Mich App 512, 520; 499 NW2d 793 (1993). In this case, there was evidence that plaintiff was collecting Type II solid waste within the defendant municipalities although it was not entitled to violate the exclusive solid waste collection contract. *Strub, supra.* Moreover, the existence of criminal or economic penalties does not afford the defendant municipalities an adequate remedy because they would be returning to the courts repeatedly in an effort to stop plaintiff from violating the ordinances. See *Vink, supra,* p 697. Finally, irreparable injury would result if plaintiff were permitted to solicit additional Type II solid waste customers while escaping the obligation to pay the fee of 1⅔ cents for each pound of garbage collected because it

would undermine the operation of the new landfill and the closure of the old one. We therefore find no abuse of discretion in the trial court's decision to enjoin plaintiff from collecting Type II solid waste within the defendant municipalities.

Affirmed.