SENIOR ACCOUNTANTS, ANALYSTS & APPRAISERS ASSOCIATION v
CITY OF DETROIT

Docket Nos. 195835, 195872. Submitted August 8, 1996, at Detroit. Decided
August 14, 1996, at 9:00 A.M.

The Senior Accountants, Analysts & Appraisers Association and
others brought two actions in the Wayne Circuit Court against the
City of Detroit and the Detroit Charter Revision Commission, seek-
ing, among other things, an injunction against the placement on the
August 6, 1996, ballot for voter approval certain proposed city char-
ter revisions affecting the city pension and retirement system. The
plaintiffs contended that the proposed revisions represented imper-
missible unilateral changes to matters of mandatory collective bar-
gaining under the public employment relations act (PERA), MCL
423.201 *et seq.*; MSA 17.455(1) *et seq.*, and therefore violated the
home rule cities act (HRCA), MCL 117.1 *et seq.*; MSA 5.1071 *et seq.*,
specifically § 36, MCL 117.36; MSA 5.2116, which provides that no
provision of any city charter shall conflict with or contravene the
provisions of any general law of the state. The court, James J.
Rashid, J., consolidated the actions and granted the requested
injunction. The city and the charter revision commission filed two
applications for leave to appeal and some of the plaintiffs filed
cross appeals. The Court of Appeals granted leave and consoli-
dated the appeals.

The Court of Appeals *held*:

The trial court abused its discretion in issuing the injunction
inasmuch as the plaintiffs failed to establish that justice required
the grant of an injunction, that real and imminent danger would
have arisen if no injunction were issued, and that there was no ade-
quate remedy at law. Also, an injunction generally should not be
issued to prevent the holding of an election regardless of whether
the election is illegal.

1. Justice did not require the issuance of an injunction because it
was not at all certain that the voters would have approved the pro-
posed charter revisions or that the city would have acted unilater-
ally in implementing the disputed changes to the pension and
retirement system. There are adequate remedies under the PERA
should the city engage in the unfair labor practice of unilaterally

implementing changes relating to matters of mandatory collective bargaining.

2. Irreparable harm would not have ensued had the injunction not been issued. Although it is unquestioned that retirement provisions are mandatory subjects of bargaining under the PERA and that charter provisions enacted pursuant to the HRCA cannot contravene the obligations imposed by the PERA, the mere submission for voter approval of charter language that, on its face, may violate the duty to bargain under the PERA is not unlawful, nor does it constitute irreparable harm to a union. The plaintiffs' contention that they would have been placed in an unequal collective bargaining position had the injunction not been issued is unsupported by the PERA. The PERA requires bargaining in good faith, but does not require that the parties have equal bargaining positions. The contention that the placement of the disputed charter revisions on the ballot would have misled the voters into thinking that the proposed pension and retirement changes could have been implemented unilaterally by the city does not provide a sufficient ground for enjoining an election because the voters' understanding of the issues is itself part of the political process with which the courts should not intervene.

3. The PERA provides the plaintiffs with adequate remedies.

4. The plaintiffs' motion to dismiss the appeals, which motion was held in abeyance pending additional briefing and argument, is dismissed. The charter revision commission has authority to reconvene for the purpose of submitting on the November 5, 1996, ballot the charter revisions it originally intended to propose.

5. Issues raised by some of the plaintiffs in their cross appeal, which were withdrawn at oral argument, remain preserved for, and may be raised in, a future appellate proceeding.

Reversed and remanded.

INJUNCTIONS — ELECTIONS — CITY CHARTER REVISIONS — PENSION AND RETIRE-
MENT SYSTEMS.

A circuit court may not enjoin an election involving a proposed city charter revision that affects the city's pension and retirement system and that, on its face, violates both the requirement under the public employment relations act of bargaining in good faith over matters of mandatory collective bargaining and the home rule cities act provision that states that no provision in a city charter shall conflict with or contravene the provisions of any general law of this state; justice does not require the issuance of such an injunction, irreparable harm does not ensue from the nonissuance of such an injunction, and adequate remedies at law exist (MCL 423.210[1][e], 423.215, 117.36; MSA 17.455[10][1][e], 17.455[15], 5.2116).

*Steinberg, O'Connor, Paton & Burns, P.L.L.C.* (by *Doyle O'Connor*), for Senior Accountants, Analysts & Appraisers Association and others.

*Miller, Cohen, Martens, Ice & Geary, P.C.* (by *Michael J. Bommarito*), for Michigan Council 25 of the American Federation of State, County, and Municipal Employees, AFL-CIO, Local 23 and others.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Leonard D. Givens, Jerome R. Watson,* and *John H. Willems*), for City of Detroit and Detroit Charter Revision Commission in Docket No. 195835.

*David J. Masson,* Chief Assistant Corporation Counsel, and *Jack P. Timmony,* Assistant Corporation Counsel, for City of Detroit in Docket No. 195872.

Amicus Curiae:

*Ronald Zajac,* for Board of Trustees of the General Retirement System for the City of Detroit.

Before: REILLY, P.J., and CORRIGAN and YOUNG, JJ.

PER CURIAM.

I

PROCEDURAL HISTORY

On June 28, 1996, defendants Detroit Charter Revision Commission and City of Detroit sought emergency leave to appeal the June 21, 1996, injunctive order of the Wayne Circuit Court, issued against the commission only, striking certain provisions of a proposed 1997 revised city charter that was to be submitted by the commission for voter approval at the August 6, 1996, election. Plaintiffs are several labor

organizations with collective bargaining agreements with the city and several individuals who are affiliated with these labor organizations and are city employees or retirees, including one current member of the board of trustees for the city's general retirement system.

This Court granted leave because of the importance of the issues presented. However, because defendants did not request a stay, the injunction remained in place during the pendency of the appeal.[1] As a consequence, the proposed charter revision, shorn of the provisions removed as a result of the injunction, was submitted to the voters and was passed on August 6, 1996. Given the apparent complexity of the legal issues involved and the public significance attached to enjoining, at least in part, a political election, the Court invited the parties to submit additional briefs and present oral arguments.[2]

At issue are proposed revisions to §§ 11-102 and 11-103 of the city charter concerning the city's general pension or retirement system. Two kinds of proposed revisions are challenged here.[3] The first would require so-called "excess earnings" from pension investments to be allocated among certain pension benefit funds in proportion to each fund's percentage of total system assets, with the remainder to be credited to the

---

[1] There were initially two cases filed in the circuit court, by two different groups of the various plaintiffs. The cases were disposed of jointly by the circuit court and the separate appeals of the city (Docket No. 195872) and the commission (Docket No. 195835) were subsequently consolidated by this Court.

[2] The Court also entertained the amicus brief of the Board of Trustees of the General Retirement System of the City of Detroit.

[3] The record establishes that the city administration was the proponent of all revisions except the proposal adding a second retiree member to the pension board.

fund contributed to by the city, thereby reducing the city's future contribution obligations. This revision would limit the discretion exercised under the current charter by the pension board of trustees to allocate excess earnings among the several pension funds in its sole determination.

The second type of revision would change the composition of the pension board of trustees by adding a second retiree member (currently only one retiree member serves), requiring that all trustees be Detroit residents, and allowing the mayor, who is currently an ex-officio trustee, to appoint a designee to attend meetings of the board in his stead.

Each of these proposed revisions were challenged by plaintiffs on the ground that they represented unilateral changes in the collective bargaining agreements between the city and the city's labor organizations concerning matters that are mandatory subjects of collective bargaining.[4] Following the adoption of these proposed pension revisions by the commission in April 1996, plaintiffs brought in the Wayne Circuit Court two actions for mandamus and injunctive relief, seeking to prevent the referenced pension revisions from being submitted with the other proposed charter revisions to the voters for adoption.

At a June 21, 1996, hearing, the circuit court refused to grant any relief as to the city and declined to issue mandamus, but enjoined the commission

---

[4] Neither the city nor the commission disputes plaintiffs' contention that these challenged provisions may not be legally implemented as to the city's union employees without bargaining. The city maintains, though not without dispute by plaintiffs, that it may implement these provisions immediately upon the effective date of the revised charter as to the city's *non*union employees.

from including the challenged provisions among the charter revisions to be submitted to the voters. The circuit court found three bases for the injunction it issued. First, the challenged pension revisions were illegal and beyond the scope of the commission's authority under the home rule cities act (HRCA), MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*, because those provisions violate or conflict with the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455 (1) *et seq.* In particular, the circuit court reasoned that the commission's authority even to propose charter provisions is limited by § 36 of the HRCA, MCL 117.36; MSA 5.2116, which states:

> No provision of any city charter shall conflict with or contravene the provisions of any general law of the state.

Second, the circuit court found that enactment of those provisions would destroy a "level playing field" in collective bargaining with the city because they "will impact the playing field at the bargaining table unfairly on the issue of pensions," thereby precluding "real good faith bargaining on this subject." Finally, the circuit court found that presenting the revisions to the voters in the proposed form would constitute a harm to the public because the provisions were stated in unqualified terms but, as defendants concede, could not be implemented for union employees without collective bargaining. Consequently, the circuit court found that the proposed revisions would mislead the public into believing that they were voting for provisions that could not, in fact, become effective on January 1, 1997, as stated in the proposed charter revision.

The circuit court order allowed the commission the opportunity to prepare alternative pension revisions that comported with the court's findings on the HRCA and the PERA. The commission declined this opportunity and, with the city, appealed.

II

ANALYSIS

Although the underlying issues involve complex questions concerning the relationships between the PERA and the HRCA, the narrow legal question before this Court is whether the circuit court abused its discretion in issuing the injunction. We review the grant of an injunction for an abuse of discretion. *Lansing Ass'n of School Administrators* v *Lansing School Dist Bd of Ed*, 216 Mich App 79, 85; 549 NW2d 15 (1996).

A

INJUNCTIVE RELIEF

An injunction represents an extraordinary and drastic act of judicial power that should be employed sparingly and only with full conviction of its urgent necessity. *Reed* v *Burton*, 344 Mich 126, 132; 73 NW2d 333 (1955). As a consequence, the courts have fashioned an array of principles designed to clarify when such extraordinary powers are appropriately exercised. Generally, three core elements must be established by a party seeking an injunction: (1) justice requires that the court grant the injunction; (2) a real and imminent danger of irreparable injury arises if an injunction is not issued; and (3) there exists no adequate remedy at law. *Peninsula Sanitation, Inc v*

*Manistique,* 208 Mich App 34, 43; 526 NW2d 607 (1994).

Because the injunction issued in this case does not merely affect the rights of private parties, but the right of the citizens of the City of Detroit to vote on a proposal by their elected charter revision commission, overlain on these basic elements is another. Our Supreme Court has stated it as follows:

> "Although there is authority to the contrary, the general rule is that an injunction will not issue to prevent the holding of an election whether or not the election is illegal, and that this is so whether the election relates to the filling of public office or other matters, such as changes in boundaries of political subdivisions and kindred matters." [*Attorney General v Ingham Circuit Judge,* 347 Mich 579, 583; 81 NW2d 349 (1957) (quoting 43 CJS, Injunctions, § 115[b], p 644).].[5]

The wisdom of the principle of judicial restraint expressed by our Supreme Court in *Ingham Circuit Judge* is self-evident; the notion that our courts may precipitously intervene in the political arena and preempt a vote of the people is inconsistent with both the role of the courts and the principles of our democracy.

---

[5] This rule of judicial nonintervention in matters political is observed in other, related contexts, such as cases involving constitutional challenges to initiatives and petitions before they have been submitted to a vote. See *Hamilton v Secretary of State,* 212 Mich 31; 179 NW 553 (1929); *Automobile Club of Michigan Committee For Lower Rates Now v Secretary of State (On Remand),* 195 Mich App 613; 491 NW2d 269 (1992). See generally 26 Am Jur 2d, Elections, §§ 297, 404; 42 Am Jur 2d, Injunctions, §§ 168-174.

## B

### REQUIREMENTS Of JUSTICE

Plaintiffs have failed to carry their burden of showing an urgent necessity for injunctive relief, which is necessary to satisfy the requirements of justice. The injunction was premature. The harm, if any, to plaintiffs is at least two removes from actuality.

First, no vote has been cast on the challenged provisions. It is not (and was not at the time the injunction was issued) at all certain that the voters will enact a revised charter containing the challenged pension provisions — particularly given the strenuous objections by labor organizations who represent city employees eligible to vote on the charter revisions proposed. The circuit court's action was therefore preemptive and presumed what the citizens of Detroit *might* do in an election never held. Had the circuit court stayed its hand, it is entirely possible the legal concerns raised by the plaintiffs might never have come to pass.

Second, *all* parties agree that the challenged provisions cannot be legally implemented, even if enacted by the voters, without bargaining. Unless and until both the voters of Detroit approve the challenged provisions *and* the city attempts unilaterally to impose the provisions without bargaining, plaintiffs cannot suffer any harm. At the time the injunction was issued, neither event was certain to occur. The harm to plaintiffs was neither imminent nor irreparable. This is particularly true given that, in the event of adoption of these provisions and an attempt by the city thereafter to implement them unilaterally, plaintiffs could *then* have enjoined such action.

It appears equally unquestioned among the parties that the only PERA right in conflict with the proposed charter provisions is the duty to bargain, the breach of which is an unfair labor practice (ULP). See the PERA, §§ 10(1)(e), 15, and 16, MCL 423.210(1)(e), 423.215, 423.216; MSA 17.455(10)(1)(e), 17.455(15), 17.455(16). The PERA provides that the Michigan Employment Relations Commission (MERC), the agency created to administer the act, has both *exclusive jurisdiction* over claims involving ULPs *and* the power, through resort to injunctive relief, to prevent or correct ULPs. See the PERA, § 16; *Lamphere Schools v Lamphere Federation of Teachers*, 400 Mich 104, 117; 252 NW2d 818 (1977). As such, the PERA itself provides plaintiffs with an adequate remedy at law to prevent or repair any of the alleged harms to plaintiffs.

Given this record, plaintiffs have failed to demonstrate either irreparable harm or the lack of an adequate remedy at law. Most important, plaintiffs failed to demonstrate why, in this controversy involving a vote on a public and political question, the circuit court should have abandoned the "general rule" regarding the issuance of injunctions stated by our Supreme Court in *Ingham Circuit Judge*.[6]

---

[6] We find the four or five Michigan cases cited by plaintiffs as authority for enjoining a public vote on charter proposals distinguishable because those cases involved essentially procedural defects in the manner the proposals were made and did not involve any challenge directed at the content of the charter proposals themselves or the expression of the will of the electorate as to the desirability of such proposals.

C

IRREPARABLE HARM

Plaintiffs contend that they would have suffered irreparable harm if the injunction had not been issued because the challenged charter provisions involve mandatory subjects of bargaining, which the city is not free to amend unilaterally, except in violation of the duty to bargain set forth in §§ 10(1)(e) and 15 of the PERA. They and the circuit court relied upon *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44; 214 NW2d 803 (1974), for the proposition that it was unlawful and beyond the scope of its authority under § 36 of the HRCA for the commission to propose the challenged retirement provisions. *Detroit Police Officers Ass'n* does unquestionably state that (a) retirement provisions are mandatory subjects of bargaining, *id.* at 63-64, and (b) charter provisions enacted pursuant to the HRCA cannot contravene the obligations imposed by the PERA, *id.* at 65-70. In further support of their argument, plaintiffs especially rely upon the interpretation of *Detroit Police Officers Ass'n* that the Supreme Court provided in *Local 1383, Int'l Ass'n of Fire Fighters AFL-CIO v City of Warren*, 411 Mich 642, 660; 311 NW2d 702 (1981).

However, neither *Detroit Police Officers Ass'n* nor *Local 1383* holds that the mere submission for voter approval of charter language that may facially violate the PERA's duty to bargain is unlawful or constitutes irreparable harm to a labor organization. We note with interest the fact that, in *Detroit Police Officers Ass'n*, the Supreme Court apparently *thought* about, but never answered, the closely related question whether the submission to voters of language con-

cerning mandatory subjects of bargaining was, itself, violative of the PERA:

> Our primary inquiry, then, must be to determine if the incorporation of the retirement provisions into the City Charter obviates the duty to bargain in good faith over a mandatory subject of bargaining. *Secondarily, we must determine if the City committed an unfair labor practice in 1968 by unilaterally submitting a retirement plan amendment to the electorate and thereby foreclosing bargaining.* [391 Mich 63 (emphasis added).]

Unfortunately, the closest the Court ever came to answering the second question it posed in *Detroit Police Officers Ass'n* was the Court's acknowledgment that it agreed "with MERC that the city had a duty to bargain over the changes in the police retirement plan." *Id.* at 69.

Our Supreme Court has made it clear that charter provisions may not supersede the obligations imposed by the PERA. *Detroit Police Officers Ass'n, supra* at 64-70. However, the Supreme Court has never explicitly held that mere inclusion of mandatory subjects of bargaining in a charter, not followed by an attempt to impose these as unbargained-for terms of a collective bargaining agreement, violates the PERA.[7] Significantly, in a factually and legally

---

[7] The Supreme Court noted in *Detroit Police Officers Ass'n* that retirement plans are a "permissible charter provision" under the HRCA. 391 Mich 66. Further, the Court distinguished those elements of a pension plan that were the "outline" of a pension plan from those that were "substantive" in nature. *Id.* at 67. Contrary to the plaintiffs' suggestion that the *Detroit Police Officers Ass'n* Court held that inclusion of "substantive" plan details in a charter was unlawful under the HRCA, the Court merely concluded that the "substantive" provisions did not rise to the level of a "state law" under the HRCA as the City of Detroit had argued. *Id.* Instead, the Court held that "substantive provisions" were subject to the duty to bargain. *Id.*

similar case, the MERC held that the city did *not* violate the PERA's duty to bargain when it caused to be enacted a charter amendment of the seniority rules pertaining to fire fighters, but did not attempt to impose them without collective bargaining. See *City of Detroit Fire Dep't v Detroit Fire Fighters Ass'n, Local 344, IAFF,* 1982 MERC Lab Op 150. In that case, the MERC adopted the following reasoning of its hearing referee:

> In regard to the enactment of the Charter amendment by the City Council and putting it on the ballot with the people of Detroit electing to adopt the amendment, the undersigned agrees with the City that what occurred did not violate the bargaining obligation imposed by PERA. As stated by the Charging Party, the alteration of the City Charter cannot in itself, have any effect upon the wages, hours and conditions of employment of employees who are lawfully represented by a labor organization. Both the Commission and the Courts have decided that collective bargaining agreements, lawful under PERA, prevail over City Charters. In *Pontiac Police Officers Association v City of Pontiac,* 397 Mich 674 [246 NW2d 831] (1976), the Michigan Supreme Court stated that "the public employer's duty to bargain collectively pursuant to the PERA prevails over conflicting provisions of the Charter of a Home Rule City." This has been reiterated by the Supreme Court in *Detroit Police Officers Association v City of Detroit,* 391 Mich 44 [214 NW2d 803] (1974); *Mount Clemens Fire Fighters Union v City of Mount Clemens,* 58 Mich App 635 [228 NW2d 500] (1975). The principle stems from the Commission's findings when considering the obligation to bargain in the face of a conflict between a City Charter and a collective bargaining agreement. *City of Riverview,* 1979 MERC Lab Op 853; *City of Detroit,* 1971 MERC Lab Op 237; *City of Flint (Hurley Hospital),* 1968 MERC Lab Op 348; *City of Westland,* 1977 MERC Lab Op 230.

The effect of the November 4, 1980, Charter amendment was accurately summed up by Wayne Circuit Judge Victor Baum.

In *Phoenix of the Detroit Fire Department v Detroit Fire Fighters Association,* Wayne County Circuit Court Civil Action Number 80 035 919 CZ (1980) Judge Baum stated as follows:

"Therefore, the vote of the electorate on November 5th on the Charter amendment proposed concerning job promotions within the Fire Department, regardless of the outcome of the election, will not change the collective bargaining agreement provisions concerning seniority and provisions [sic, promotions]. They will not bind the Union, the Employer or members of the bargaining unit in any way. Most significantly, the outcome of the election will not bind the Union, as the exclusive agent of all the employees in the bargaining unit, in its collective bargaining negotiations with the Employer."

Nor has the undersigned found any significance in the fact that the most recently expired collective bargaining agreement made a reference to Title IX, Chapter VII, Article VI, Part a., Section I of the former City Charter. The expired contract provision is explicit as to what document is being referred to. The Charter amendment of November 4, 1980, did not therefore, vary the terms of this collective bargaining agreement. Indeed, the City has followed the terms of the Charter referred to in the expired collective bargaining agreement and also adhered to the contractual provisions demanding all promotions in the Fire Department be made strictly by seniority. [1982 Merc Lab Op 159-160.]

Accordingly, the circuit court's determination that it was unlawful for the commission even to propose the challenged pension provisions because this action might precipitate a violation of the PERA was legally incorrect. We find it instructive that the Supreme Court in *Detroit Police Officers Ass'n* strove to reconcile the HRCA and the PERA to avoid a conflict between the statutes. The MERC's analysis in *Fire Fighters*

*Association, Local 344* appropriately vindicates the interests protected by the PERA and the HRCA without creating the kind of conflict between these statutes the circuit court presumed necessarily had to occur in this case.

These authorities suggest that the HRCA and the PERA can best be harmonized by construing § 36 of the HRCA as a mechanism for resolving conflicts between the state's general laws and city charter provisions that have been enacted, rather than a limit on the right of a charter commission to propose substantive charter provisions for enactment. This construction preserves the ascendancy of the PERA in any dispute involving charter provisions touching upon mandatory subjects of bargaining in potential violation of the PERA. Moreover, this construction respects the exclusive jurisdiction of the MERC over matters involving ULPs and insulates the courts from intervening in such disputes until a conflict between the statutes has been triggered by an actual attempt to enforce charter provisions contrary to the PERA.

Insofar as the circuit court issued its injunction on the basis that the challenged pension provisions were illegal, the circuit court erred.

On the specific question of irreparable injury, plaintiffs contend that the harm they would have suffered, but for the imposition of the injunction, was the creation of an unlevel "playing field" at the bargaining table as the circuit court found. Plaintiffs have cited no authority for this proposition. Indeed, the PERA creates the duty to bargain in good faith, but makes no reference to "equal" bargaining positions of the parties to a collective bargaining relationship. It obligates the parties to meet and confer in good faith. See the

PERA, § 15. Moreover, the PERA imposes no duty for either party to make a concession. *Id.*

No party to a collective bargaining relationship, much less any court that is a stranger to this relationship, is obligated to maintain or foster a "level playing field" in the bargaining relationship. Because there is no legal right to a "level playing field," the circuit court erred in finding such a duty and abused its discretion in enjoining the commission on this basis.

The second irreparable harm found by the circuit court and urged by plaintiffs as a basis for leaving the injunction intact is the alleged misrepresentation that is suggested will be perpetrated on the public by the presentation of these unconditioned, mandatory changes to the pension program, changes which *all* parties agree cannot be implemented by the city without bargaining with the unions. Assuming, without deciding, that plaintiffs have standing to raise this issue, plaintiffs have offered no authority to support the proposition that this form of alleged public harm is a proper basis for judicial intervention by injunction in the political process.

Possible confusion in the minds of the voters is generally not a sufficient basis to enjoin an election because the voters' understanding of the issues is itself a part of the political process. *Grand Rapids City Clerk v Judge of Superior Court*, 366 Mich 335, 339-340; 115 NW2d 112 (1962). Especially in the context of this case, involving the restraint of a vote of the people on a policy question presented by their elected charter commission, and in light of the guidance supplied by our Supreme Court in *Grand Rapids City Clerk, supra,* we decline to recognize a new rule of equity that citizens may enjoin an election

on the basis of *possible* confusion of the public concerning a political question. As noted in *Grand Rapids City Clerk,* the political process is itself designed to allow interested partisans to identify and challenge the factual and policy merits and demerits of such public questions. *Id.*

The circuit court abused its discretion in issuing an injunction because the public might be confused about the impact or efficacy of the challenged pension provisions.

D

INADEQUATE LEGAL REMEDY

The record also fails to establish that plaintiffs were without an adequate remedy at law. Plaintiffs' briefs are strikingly sparse in addressing this issue. And, given that the PERA provides plaintiffs with the statutory protection from any ULP committed by the city, it is not surprising that plaintiffs have chosen not to press this portion of their burden of proof in sustaining the injunction.

Plaintiffs have an adequate remedy at law. For this reason, the circuit court abused its discretion in issuing an injunction.

E

CONCLUSION

We reverse that portion of the June 21, 1996, order of the circuit court that enjoins the commission, and we order dissolution of the injunction issued by that court.

We also deny plaintiffs' motion to dismiss, which we held in abeyance pending additional briefing and argument, as we are unpersuaded that the submission

of the modified charter revision proposal to the voters on August 6, 1996, obviates the need for emergency appellate review or renders this appeal moot. We reject plaintiffs' contention that the commission lacks authority to reconvene for the purpose of submitting on the November 5, 1996, election ballot the charter revisions it originally intended to propose. Ordinarily a city charter revision commission's work is finished once a proposed revised charter is approved by public vote. See the HRCA, § 18, MCL 117.18; MSA 5.2097. However, that is not the case in this instance because the commission's opportunity to place on the ballot *all* the provisions of the revised charter it wished to propose was thwarted by the intervention of the circuit court.

Moreover, we do not regard the commission's decision to proceed with the August 6, 1996, vote on the charter revision (as modified in accordance with the circuit court's order) as a forfeiture of the right to submit its original proposal to the voters at some future date in the event that the circuit court's injunction were later overturned. The commission urged that one of the reasons for its original decision to submit its proposal at the August 6, 1996, election was to ensure that a subsequent general election date remained available for use in case the voters rejected the commission's original proposal. Thus, the commission had to proceed with the August 6 submission to preserve this aspect of its original decision, which would have been lost if the commission had waited for the decision of this Court before submitting any proposal to the voters.

Finally, although some of the plaintiffs have filed a cross appeal, in light of the time constraints, counsel

for those plaintiffs agreed during oral argument that their cross appeal would be withdrawn provided that plaintiffs' right to raise the issues involved in their cross appeal is preserved. Accordingly, we hold that the withdrawal of plaintiffs' cross appeal shall in no way impair their opportunity to raise those issues in a future appellate proceeding.

The decision of the circuit court is reversed. This cause is remanded to the circuit court for further proceedings consistent with this court's ruling. We do not retain jurisdiction. No costs are to be awarded, given the public nature of the issues presented.