Per Curiam.
 

 Defendants, the city of Detroit and the Detroit Housing Commission (dhc), appeal as of right
 
 *297
 
 from the trial court’s order granting summary disposition for plaintiff, American Federation of State, County and Municipal Employees (afscme) doing business as afscme Michigan Council 25 and afscme Locals 23 and 2394, with respect to its request for declaratory relief, granting in part the request for declaratory relief of intervening plaintiff, Detroit City Council, regarding the validity of several ordinances related to the dhc, and granting plaintiff’s request for a preliminary injunction barring the city from severing its employment relationship with dhc employees until further legislative action by the city council. We reverse the trial court’s order with respect to afscme’s request for declaratory relief, reverse in part and affirm in part the trial court’s order with respect to the city counsel’s request for declaratoiy relief, and vacate the preliminary injunction.
 

 i. jurisdiction
 

 As a preliminary matter, AFSCME first asserts that this Court lacks jurisdiction of this appeal in view of the fact that count I of afscme’s first amended complaint was still outstanding. We disagree. This Court has the jurisdiction to entertain appeals filed by parties aggrieved by a final order of the circuit court. MCR 7.203(A)(1). The term “final order” is defined by MCR 7.202(7)(a)(i) as “the first judgment or order that disposes of all the claims and adjudicates all the rights and liabilities of all the parties.” In turn, the term “claim” is defined by MCR 2.111(B)(1) as “[a] statement of facts, without repetition, on which the pleader relies in stating the cause of action, with specific allegations to inform the adverse party of the nature of the claims the adverse party is called on to
 
 *298
 
 defend.” In count I of its first amended complaint, afscme requested the issuance of a preliminary injunction to keep the status quo while it litigated an unfair labor grievance in the Michigan Employment Relations Commission. In both the January 2002 and the May 2002 orders, the circuit court issued a preliminary injunction in favor of afscme. The orders in question disposed of the claim for a preliminary injunction as well as adjudicated the rights and liabilities of the parties concerning this cause of action. If the injunction was not as broad as AFSCME desired, that issue is relevant to the validity of the circuit court’s actions, not the jurisdiction of this Court.
 

 ' H. ISSUES PRESENTED
 

 Notwithstanding the assertion of. collateral and underlying matters, the two decisive issues for our determination on appeal are (1) whether the 1996 amendments of the Michigan housing commission act, MCL 125.651
 
 et seq.,
 
 by operation of law, severed the city’s employment relationship with persons assigned to and employed by the dhc, thereby making it a separate and autonomous entity without the need for “legislative action” by the city council, and (2) whether certain ordinances enacted by the city council, addressing dhc operations, procedures, and employee compensation and classification, are valid, in light of the current version of the housing commission act.
 

 ffl. BACKGROUND AND PROCEDURAL HISTORY
 

 The city of Detroit established the dhc in 1933, under the authority of the housing commission act, 1933 PA 18, MCL 125.651
 
 et seq.
 
 Pursuant to the housing commission act, cities meeting the population
 
 *299
 
 requirement were authorized “to purchase, acquire, construct, maintain, operate, improve, extend, and/or repair housing facilities and to eliminate housing conditions which are detrimental to the public peace, health, safety, morals, and/or welfare.”
 
 In re Brewster Street Housing
 
 Site, 291 Mich 313, 323; 289 NW 493 (1939). Under the former version of the housing commission act, the dhc was essentially under the control of the city, and its employees were city employees.
 

 The United States Department of Housing and Urban Development (hud) funds, monitors, and regulates public housing authorities, including the dhc. For eighteen years, from 1979 through 1997, HUD Public Housing Management Assessment Program rated DHC a poor performer and a profoundly “troubled” public housing authority because of vacant and dilapi-dating properties, untimely rent collections, and a general failure to meet hud standards. As a result of the history of failure, the city entered into a series of agreements with hud that would permit dhc to make substantial improvements in its performance, effectiveness, and efficiency in its role of providing low-income housing. In July 1995, hud and the city entered into a memorandum of agreement (moa), followed by a partnership agreement in December 1995. A complete and functional separation of the dhc from the city’s governmental systems was a major objective and a basic constant in the agreements. The separation was described as being essential to maximizing the dhc’s operational efficiency and achievement of hud standards.
 

 During the same period that the city was attempting to improve the dhc, the Legislature passed 1996 PA 338 in June 1996, which substantially amended the
 
 *300
 
 housing commission act. The 1996 amendments established housing commissions, such as the dhc, as distinct public bodies corporate with enumerated independent powers and authorities. See MCL 125.654(5). Among the powers specifically conferred on such commissions are the powers to “sue or be sued,” MCL 125.654(5)(a), to form or incorporate corporations, MCL 125.654(5)(b), (d), (e), to serve as a shareholder or member of a qualified nonprofit corporation, MCL 125.654(5)(c), to make determinations concerning low-income housing and the elimination of detrimental housing, MCL 125.657(a), to solicit funds for operation, MCL 125.656(2), to purchase, lease, sell, exchange, transfer, assign, mortgage, improve,'or construct real or personal property, MCL 125.657(b), and to exercise complete control over its projects, MCL 125.662. In addition, in accordance with the 1996 amendments, housing commissions such as the DHC were statutorily authorized to employ and fix the compensation of their directors and other employees and to prescribe the duties of those persons. MCL 125.655(3).
 

 In October 1996, hud and the city entered into a revised moa, which was approved by the city council. The revised MOA did not alter the status of the dhc in relation to the city. Indeed, the revised moa required the dhc to seek “additional approvals from the City Council in order to take full advantage of state legislation providing greater authority for housing commissions.” By its terms, the revised moa ended on June 30, 1997.
 

 The dhc was removed from hud’s troubled list in 1997. Thereafter, in 1998, the former mayor prepared a memorandum of understanding and related ordi
 
 *301
 
 nances, seeking to establish the dhc as a “separate and independent entity,” which the city council rejected. Thus, all dhc employees were treated as city employees in 1998 through 2001 under the city’s compensation and classification plan, the executive organization plan, and the city housing ordinance, which expressly subjected DHC employees to the provision of the city charter related to civil service. See Detroit Code, subsection 14-5-3(7).
 

 On July 17, 2001, relying on the 1996 amendments, the former mayor notified the city council that the dhc would begin functioning as a “public body corporate” on September 21, 2001. The former mayor requested that the city council approve a proposed intergovernmental agreement between the city and the dhc to allow current city employees who elect to be employed by the dhc to continue to participate in the city’s health and retirement plans. The former mayor also submitted proposed amendments of the housing ordinance, amending the executive organizational plan in the Detroit Code, establishing the dhc as a “separate public body corporate” in conformity with the housing commission act, and delegating employment authority to the dhc.
 

 In response, the city council adopted a series of ordinances and resolutions, which effectively avowed dhc employees as city employees and thwarted the functional separation of the dhc from the city. Specifically, on September 17, 2001, the city council adopted a resolution expressly rejecting the declaration of the former mayor and the dhc that the dhc was a separate employer under the housing commission act and declaring that all city employees assigned to the DHC, now and in the future, are city employees. On Sep
 
 *302
 
 tember 26, 2001, the city council enacted the following ordinance:
 

 All housing commission employees shall be members of either the classified service or the unclassified service as is provided under Section 6-517 of the Charter of the City of Detroit, and shall be entitled to all rights of all employees of the City of Detroit, including but not limited to pensions and benefits. [Detroit Code, subsection 14-5-3(7).]
 

 Subsequently, the city council formally rejected the former mayor’s proposed amendments of the city housing ordinance and the executive organizational plan and overrode the mayor’s vetoes of the city council’s resolutions and ordinances.
 

 On September 19, 2001, afscme filed suit in the Wayne Circuit Court, seeking an injunction to maintain the status quo while it pursued an unfair labor practice charge against the city and the dhc in the Michigan Employment Relations Commission. On September 20, 2001, by stipulation of the parties, the court entered a temporary restraining order indicating that all afscme employees who worked at the dhc would remain city employees. On September 21, 2001, the city council intervened as a plaintiff, seeking a declaratory judgment regarding the validity of the ordinances pertaining to the operation, procedures, and employees of the DHC. On October 18, 2001, AFSCME amended its complaint to add a request for declaratory relief concerning whether the housing commission act gave the city the power to divest itself of the dhc and to sever its relationship with dhc employees. On October 19, 2001, the city council filed an amended complaint, seeking a temporary restraining order relative to all DHC employees consistent with the previously entered order relative to only
 
 *303
 
 AFSCME employees, a declaratory judgment that the related ordinances and resolution that all DHC employees axe and will remain city employees are valid, and a permanent injunction restraining defendants from acting in a manner inconsistent with the declaratory judgment.
 

 On November 19, 2001, the court issued a declaratory ruling, holding that severance by the city of its employment relationship with dhc employees is permissive under the 1996 amendment of the housing commission act and that the housing commission act did not sever the dhc from the city by operation of law. The court also found that, as recently as April 2001, the former mayor had taken affirmative action to continue dhc employees as city employees by proposing the budget for the fiscal year of July 2001 through June 30, 2002. The court entered a declaratory order on January 25, 2002, declaring that the city had exercised authority under the housing commission act to establish employee compensation ranges and classification to be used by the DHC and that all DHC employees are city employees “at least until June 30, 2002.”
 

 On February 15, 2002, defendants filed a motion for summary disposition with respect to afscme’s request for declaratory relief on the basis that the 1996 amendments of the housing commission act make housing commissions separate independent employers by operation of law and with respect to the city council’s request for declaratory relief on the basis that certain ordinances and resolutions adopted by the city council violate state law and are preempted. Thereafter, afscme filed a cross-motion for summary disposition. Afscme essentially argued that the court
 
 *304
 
 had already determined that the 1996 amendments of the housing commission act did not sever the city’s relationship by operation of law, that the city had continued to exercise the power to reserve employment (through its continued inclusion of DHC employees in the city’s compensation plan, the inclusion of the dhc in the city budget through June 30, 2002, and the continuation of the housing ordinance until September 2001), and that any changes in the status of DHC employees can only be effectuated in accordance with the city charter.
 

 On May 21, 2002, the trial court entered an order of declaratory judgment that the city did not have the statutory authority to divest itself of the dhc and that several ordinances pertaining to the employment status of DHC employees were valid and enforceable. The trial court also entered a preliminary injunction barring the city from severing its employment relationship with dhc employees until further legislative action by the city council. The trial court, however, held that the housing commission act preempted two of several ordinances related to the dhc. Defendants now appeal, and plaintiffs cross appeal.
 

 IV. STANDARD of review
 

 We review de novo a trial court’s decision regarding a motion for summary disposition in a declaratory relief action.
 
 Michigan Educational Employees Mut Ins Co v Turow,
 
 242 Mich App 112, 114; 617 NW2d 725 (2000). Statutory interpretation is also considered de novo on appeal.
 
 Oakland Co Bd of Co Rd Comm’rs v Michigan Property & Casualty Guaranty Ass’n,
 
 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of judicial interpretation of statutes is to discern
 
 *305
 
 and give effect to the intent of the Legislature.
 
 In re MCI Telecommunications Complaint,
 
 460 Mich 396, 411; 596 NW2d 164 (1999). The first criterion in determining intent is the specific language of the statute.
 
 House Speaker v State Administrative Bd,
 
 441 Mich 547, 567; 495 NW2d 539 (1993). If statutory language is unambiguous, it is presumed that the Legislature intended the plainly expressed meaning, and the court must enforce the statute as it is written.
 
 DiBenedetto v West Shore Hosp,
 
 461 Mich 394, 402; 605 NW2d 300 (2000). Thus, when the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction. See
 
 Turner v Auto Club Ins Ass’n,
 
 448 Mich 22, 27; 528 NW2d 681 (1995).
 

 V. DHC AS AN INDEPENDENT EMPLOYER — MCL 125.655(3)
 

 The trial court held the 1996 amendments of the housing commission act, MCL 125.651
 
 et seq.,
 
 did not, by operation of law, sever the city’s employment relationship with persons assigned to and employed by the DHC and that such a severance could be attained only with the concurrence of the city council by means of the council taking “legislative action” under the Detroit City Charter. With that as a basis, the trial court ordered that all current, and future, DHC employees axe city of Detroit employees. We disagree.
 

 In general, the characteristics of an employer include (1) the power to select and hire employees, (2) the payment of wages, (3) the authority to dismiss employees, and (4) power and control over employees’ conduct.
 
 Grand Rapids Employees Independent Union v Grand Rapids,
 
 235 Mich App 398, 403; 597 NW2d 284 (1999) (citation omitted). These character
 
 *306
 
 istics must be viewed in light of the powers granted to housing commissions in the relevant statutes.
 
 Id.
 

 Before its amendment by 1996 PA 338, MCL 125.655(3), see 1978 PA 205, provided:
 

 A president and vice-president shall be elected by the commission. The commission may appoint a director who may also serve as secretary, and other employees or officers as are necessary. The commission shall prescribe the duties of its officers and employees and,
 
 with the approval of the appointing authority, may fix their compensation.
 
 The' commission may employ engineers, architects, and consultants, when necessary. [Emphasis added.]
 

 Under the former version of MCL 125.655(3), a housing commission did not have the authority to fix the compensation of its employees without approval of the appointing authority. In the absence of such authority, a housing commission was not a separate employer, but rather a coemployer, with the incorporating unit.
 
 Grand Rapids Employees Independent Union, supra
 

 [1]
 

 However, as amended in 1996, MCL 125.655(3) provides as follows:
 

 A president and vice-president and other officers designated by the commission shall be elected by the commission.
 
 The commission may employ and fix the compensation of a director, who may also serve as secretary, and other employees as necessary.
 
 Upon the recommendation .- of the appointing authority, the governing body of an incorporating unit may adopt a resolution either conditioning the establishment of any compensation of an officer or
 
 *307
 
 employee of a commission upon the approval of the governing body or establishing compensation ranges and classifications to be used by a commission in fixing the compensation of its officers and employees.
 
 The commission shall prescribe the duties of its officers and employees and shall transfer to its officers and director those functions and that authority which the commission has prescribed.
 
 The commission may employ engineers, architects, attorneys, accountants, and other professional consultants when necessary. [Emphasis added.]
 

 From the plain and ordinary meaning of this provision, it is evident that the Legislature explicitly authorized housing commissions to act as independent employers, separate and apart from their incorporating cities. The relevant powers expressly conferred on housing commissions in MCL 125.655(3) reflect those attributes of an employer. Indeed, commissions are statutorily empowered to hire employees, determine their compensation, and stipulate their functions. Further, the power to dismiss is inherent in the power to employ.
 
 Grand Rapids, supra
 
 at 406.
 

 We note that, contrary to the trial court’s holding, there is nothing in the housing commission act mandating, or even implying, a requirement of concurrence or “legislative action” by the city council before the dhc may act as a separate and autonomous employer pursuant to MCL 125.655(3).
 
 [2]
 
 We are not at liberty to read anything into a statute that is not within the manifest intention of the Legislature as
 
 *308
 
 gathered from the act itself.
 
 In re SR,
 
 229 Mich App 310, 314; 581 NW2d 291 (1998).
 

 Afscme and the city council successfully argued to the trial court that the former mayor’s action in submitting a budget that included funding for employees assigned to the dhc was the former mayor’s “recommendation” for the city council to fix the compensation of the dhc employees. However, the former mayor’s “conduct” of proposing a lump-sum budget for the DHC is inadequate to trigger the clear language and plain intent of MCL 125.655(3). The pertinent statutory section clearly provides that “upon the [mayor’s] recommendation,” the city council may adopt a resolution establishing dhc employees’ compensation or their compensation ranges and classifications. Here, it is dubious at best that the mayor’s act constituted a “recommendation” for the city council to adopt a resolution establishing the dhc employees’ compensation when nowhere in the lump-sum budget submitted by the mayor is there any mention of compensation or pay ranges for dhc employees. The budget submitted by the mayor contained no breakdown relative to the funds allocated for DHC employees, nor did it contain anything regarding compensation ranges or classification of dhc employees. Submitting the general budget for the dhc did not, therefore, constitute a recommendation from the mayor on which the city council could take action.
 
 [3]
 

 
 *309
 
 In light of the plain meaning of MCL 125.655(3), we hold that the trial court erred in ruling that the 1996 amendments of the housing commission act did not, by operation of law, sever the city’s employment relationship with persons assigned to and employed by DHC, thereby making DHC a separate and autonomous entity in the absence of “legislative action by the City Council.”
 
 [4]
 

 VI. PREEMPTION
 

 Defendants argue that the trial court erred in granting, in part, the city council’s cross-motion for summary disposition with respect to the city council’s request for declaratory relief and in holding that several of its ordinances, Detroit City Code, subsections 14-5-3(2), (5)-(7), 14-5-7(1), were valid and not preempted by the housing commission act. We agree with defendants with the exception of subsection 14-5-7(1).
 

 Detroit, as a Michigan home rule city, is subject to the constitution and general laws of this state.
 
 People v Llewellyn,
 
 401 Mich 314, 321, n 1; 257 NW2d 902 (1977);
 
 Wayne Co Chief Executive v Mayor of Detroit,
 
 211 Mich App 243, 247; 535 NW2d 199 (1995). Under Const 1963, art 7, § 22, cities have the power to frame and adopt a local charter and to adopt resolutions and ordinances relating to municipal concerns. However, a municipality is precluded from enacting an ordinance if the ordinance directly conflicts with a
 
 *310
 
 state statute or if the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter, even where no direct conflict exists between the two schemes of regulation.
 
 Llewellyn, supra
 
 at 322;
 
 Rental Property Owners Ass’n of Kent Co v Grand Rapids,
 
 455 Mich 246, 257; 566 NW2d 514 (1997). A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits.
 
 Llewellyn, supra
 
 322, n 4.
 

 A. SUBSECTIONS 14-5-3(5) AND (6)
 

 The city council amended subsections 14-5-3(5) and (6) to provide:
 

 (5) The mayor
 
 shall recommend
 
 to the city council either a compensation schedule or compensation ranges and classifications for the [housing] commission officers and employees.
 

 (6) The city council
 
 shall
 
 adopt a resolution either conditioning the establishment of any compensation of an officer or employee of a commission upon the approval of the city council or establishing compensation ranges and classifications by the commission in fixing the compensation of its officers and employees. [Emphasis added.]
 

 However, MCL 125.655(3) clearly provides, in pertinent part:
 

 The commission may . . . fix the compensation of a director . . . and other employees as necessary. Upon the recommendation of the appointing authority,
 
 the governing body of an incorporating unit
 
 may
 
 adopt a resolution either conditioning the establishment of any compensation of an officer or employee of a commission upon the approval of the governing body or establishing compensation ranges and classifications to be used by a commission
 
 *311
 
 in fixing the compensation of its officers and employees. [Emphasis added.]
 

 The mandates in subsections 14-5-3(5) and (6) are directly contrary to the express language of the housing commission act, which gives the mayor the
 
 discretion
 
 to recommend that the city council adopt a resolution through the use of the term
 
 “may.”
 
 Clearly, the use of the term “shall” rather than “may” in the ordinances indicates a mandatory rather than discretionary action. See
 
 People v
 
 Grant, 445 Mich 535, 542; 520 NW2d 123 (1994). To uphold subsections 14-5-3(5) and (6) would improperly render express language in the statute nugatory. See
 
 Altman v Meridian Twp,
 
 439 Mich 623, 635; 487 NW2d 155 (1992). Accordingly, the trial court erred in upholding subsections 14-5-3(5) and (6).
 

 B. SUBSECTION 14-5-3(7)
 

 As indicated above, the 1996 amendments of the housing commission act, by operation of law, severed the city’s employment relationship with persons assigned to and , employed by the DHC pursuant to the housing commission act. However, the city council's amendment of subsection 14-5-3(7) provides:
 

 All housing commission employees shall be members of either the classified service or the unclassified service as is provided under Section 6-517 of the Charter of the City of Detroit, and shall be entitled to all rights of all employees of the City of Detroit, including but not limited to pensions and benefits.
 

 This ordinance defies the statutory directives of the 1996 amendments, which establishes DHC as an autonomous employer and seeks to control an area regu
 
 *312
 
 lated by the housing commission act. In addition, subsection 14-5-3(7) of the code and MCL 125.655(3) cannot be harmonized. By keeping DHC employees under the city civil service system, the right to recruit, hire, test, assign, classify, promote, discipline, pay, terminate, and set job specifications for DHC employees is left solely within the control of the city’s human resources department, which operates under the city’s civil service commission. See Detroit City Charter, ch 5, §§ 6-501 to 6-519. Under the charter, the human resources department has the exclusive right to negotiate collective bargaining agreements, prescribe titles and duties for positions, test, recruit, and hire new employees, establish policies for promotion, hear and settle employee grievances, and control payroll. Detroit City Charter, ch 5, §§ 6-508 to 6-513, 6-515. Accordingly, the trial court erred in upholding subsection 14-5-3(7).
 

 C. SUBSECTION 14-5-3(2)
 

 The city council amended subsection 14-5-3(2) to provide that the DHC
 
 “shall meet not less than once per month.”
 
 (Emphasis added.) MCL 126.655(1) provides only that DHC meet “at regular intervals.” Although a municipality is not necessarily prohibited from adopting additional requirements in relation to a state statute, see
 
 Detroit v Qualls,
 
 434 Mich 340, 362; 454 NW2d 374 (1990), in dictating meeting times for the DHC, subsection 14-5-3(2) directly contradicts the requirement contained in MCL 125.655(1) that the commission “adopt its own rules of procedure.” Accordingly, the trial court erred in upholding subsection 14-5-3(2).
 

 
 *313
 
 D. SUBSECTION 14-5-7(1)
 

 We agree with the trial court that subsection 14-5-7(1) is not preempted by MCL 125.659. Subsection 14-5-7(1) states that dhc
 
 “shall make monthly reports
 
 of its activities and shall make other reports as the City Council may from time to time require.” MCL 125.659 provides that the commission “shall make an annual report of its activities to the governing body of the incorporating unit [here the city council] and
 
 shall make other reports as the governing body may from time to time require.”
 
 (Emphasis added.)
 

 Because the statutory provision requires that the dhc make annual reports of its activities, but also provides that it “shall make other reports as the governing body [city council] may from time to time require” the plain language of the statute grants the city council discretion to determine the number of periodic reports it will require from the DHC, in addition to the annual report required by statute. We find that the enactment of this particular ordinance was an appropriate exercise by the city council of the authority specifically granted to it by the Legislature. The trial court did not err in upholding subsection 14-5-7(1).
 

 VH. INJUNCTIVE RELIEF
 

 Defendants’ final argument on appeal is that the trial court erred in granting injunctive relief because it did not engage in the requisite analysis.
 
 [5]
 
 However,
 
 *314
 
 in view of our holding that the court’s ruling underlying the permanent injunction was in error, we need not address this issue.
 

 vni. THE CROSS-APPEAL
 

 On cross appeal, the city council argues that the trial court erred in ruling that subsection 14-5-3(9) and § 14-5-10 of the Detroit Code were preempted by the housing commission act. We disagree.
 

 Subsection 14-5-3(9) states that [t]he commission’s employment of professionals be ’’subject to law, city charter, the city code, rules and procedure.” (Emphasis added.) The trial court concluded that the ordinance is preempted by that part of MCL 125.655(3) that states: “The commission may employ engineers, architects, attorneys, accountants, and other professional consultants when necessary.” We agree with the trial court’s conclusion in this regard. Indeed, the ordinance essentially retains any professionals hired by DHC as city employees, which is directly contradictory to the housing commission act.
 

 Section 14-5-10 provides, in pertinent part:
 

 (a) All contracts, purchase orders, deeds and leases entered into by the Detroit housing commission shall be made in the name of the City of Detroit.
 

 (c) Pursuant to the applicable provision of the Michigan Housing Act . . . contracts and purchase orders for neces
 
 *315
 
 sary materials, as well as leases between the City of Detroit and its tenants and options, do not require approval by the city council....
 

 (d) Where the amount of any purchase
 
 does not exceed twenty-five thousand dollars ($25,000.00),
 
 the Detroit housing commission is authorized to enter into contracts, purchase orders, or amendments thereto, for the procurement of goods or services that are otherwise required for the alterations, construction, extension, improvement, maintenance, operation, reconstruction, or repair of any housing project, or any part thereof,
 
 without further action of the city council.
 

 (e) Except as otherwise provided in provisions (c) and (d) of this section 14-5-10,
 
 all other contracts, purchase orders, and amendments thereto, as well as deeds and other leases
 
 entered into by the Detroit housing commission
 
 shall be approved by the city council.
 
 [Emphasis added.]
 

 However, MCL 125.661 provides in relevant part:
 

 (1) All deeds, mortgages, contracts, leases, purchases, or other agreements regarding real property, including agreements to acquire or dispose of real property, shall be approved and executed in the name of the commission or the incorporating unit, as specified by ordinance or resolution of the governing body.
 
 For purposes of this section, contracts or leases regarding real property mean contracts to purchase or lease from a third party or other transactions under which rights or possession of real property are acquired, but do not include contracts, management agreements, or leases of that property with tenants or facility managers. Contracts or leases with tenants or facility managers shall be executed by and in the name of the commission.
 

 (2) Subsection (1)
 
 does not require
 
 contracts for the purchase of necessary materials and contracts related to the powers and duties of the commission under section 12 [§ 125.662]
 
 to be approved
 
 and executed by an incorporating unit. [Emphasis added.]
 

 
 *316
 
 MCL 125.662 provides:
 

 The commission shall have complete control of the entire housing project or projects including the construction, maintenance and operation as fully and completely as if said commission represented private owners.
 
 Contracts for construction or purchase of materials entered into by the commission shall not be required to be made through any city or village purchasing department.
 
 [Emphasis added.]
 

 Again, we agree with the trial court that subsections 14-5-10(a), (d), and (e) are preempted by MCL 125.661(2) and MCL 125.662. As the trial court found, contracts and purchase orders are narrowly defined in the housing commission act, yet the related ordinance seeks to control all “contracts and purchase orders.” Moreover, from a plain reading of the provisions at issue, it is apparent that the ordinance controls and sets conflicting requirements for a field regulated by the housing commission act. Accordingly, the trial court properly held that subsections 14-5-10(a), (d), and (e) were preempted by the housing commission act.
 

 IX. CONCLUSION
 

 We reverse the trial court’s order granting declaratory relief for afscme and finding that the 1996 amendments of the housing commission act, MCL 125.651
 
 et seq.,
 
 did not, by operation of law, sever the city’s employment relationship with dhc employees. We further reverse the trial court’s ruling that such a severance could be attained only with the concurrence of the city council by means of the council taking “legislative action” under the Detroit Charter. We reverse the trial court’s finding that subsections 14-5-3(5), 14-
 
 *317
 
 5-3(6), 14-5-3(7) and 14-5-3(2) of the Detroit Code were valid. We affirm that part of the order declaring subsection 14-5-3(9) and § 14-5-10 of the Detroit Code invalid and subsection 14-5-7(1) to be valid. The injunction enjoining the city from divesting itself from the dhc and severing itself from the dhc employees is vacated.
 

 Affirmed in part, reversed in part, and vacated in part.
 

 [1]
 

 Afscme argues in this case that neither the city council nor the dhc is the sole employer of dhc employees. Instead, afscme takes the position that the city council’s alleged establishment of compensation ranges for dhc employees creates a coemployer relationship with the dhc.
 

 [2]
 

 The trial court’s and plaintiffs’ reliance on
 
 Grand Rapids, supra,
 
 is misplaced. Although in both cases the intent of MCL 125.655(3) is at issue, the circumstances and history in
 
 Grand Rapids
 
 are clearly distinguishable from that in the instant case. Nothing in
 
 Grand Rapids
 
 suggests that the incorporating city must grant its approval before a housing authority can become a separate employer.
 

 [3]
 

 To the extent aescme and the city council contend the most recent budget submitted by the current mayor “recommended” compensation or pay ranges for dhc employees, we note that the parties acknowledged during oral argument that the budget submissions regarding the dhc occurred only after the threat of litigation to enforce ordinances we hereafter find invalid. See section vi,
 
 infra
 
 at 309-313.
 

 [4]
 

 Because the legislative intent is clear from the unambiguous statutory language, we need not attempt interpretation of the statute according to the legislative history.
 
 Sun Valley Foods Co v Ward,
 
 460 Mich 230, 236; 596 NW2d 119 (1999).
 

 [5]
 

 An injunction represents an extraordinary and drastic act of judicial power that should be employed sparingly and only with full conviction of its urgent necessity.
 
 Senior Accountants, Analysts & Appraisers Ass’n v Detroit,
 
 218 Mich App 263, 269; 553 NW2d 679 (1996). Generally, this act
 
 *314
 
 of judicial power should not be exercised unless the party seeking the injunction establishes three elements: (1) justice requires that the court grant the injunction, (2) a real and imminent danger of irreparable injury arises if an injunction is not issued, and (3) there exists no adequate remedy at law.
 
 Id.