*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MANITOU BOATWORKS & ENGINEERING, LLC,

        Plaintiff/Counterdefendant-Appellee,

v

STEP SOLUTIONS, LLC, and NATHAN GREENWOOD,

        Defendants-Appellants,

and

AQUAFORM WATERCRAFT, LLC,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
October 13, 2025
10:05 AM

No. 370202
Grand Traverse Circuit Court
LC No. 2023-036643-CZ

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendants appeal by right the circuit court's orders issuing a preliminary injunction and granting plaintiff a default judgment. We affirm.

## I. FACTS

In 2021, plaintiff, a marine engineering and consulting firm, began consulting for defendant Greenwood and his business, defendant Step Solutions, LLC. Greenwood later transferred Step Solutions' assets to defendant Aquaform, LLC. Plaintiff first consulted on safety, quality, and legal issues associated with the boats that defendants planned to manufacture. In time, plaintiff's work expanded to operating as the chief of engineering, electrical, and design for Aquaform. As part of its work, plaintiff began providing information to Aquaform's Chinese factory.

In January 2022, Greenwood presented an oral offer to plaintiff whereby in exchange for its work, plaintiff would receive equity in Aquaform and a monthly cash retainer. In 2022, however, the business relationship deteriorated. Plaintiff alleged that it was not paid its retainer

-1-

on time, that Aquaform began failing to reimburse it for parts, that Aquaform's employees began using plaintiff's credit to make unauthorized purchases, that Aquaform was not sufficiently protecting plaintiff's designs[1] from unauthorized use, and that Aquaform was engaging in fraudulent business practices in connection with the boats it sent to dealers.

Plaintiff filed a complaint in May 2023 and a request for a preliminary injunction against defendants. At a June 26, 2023 hearing on the motion for a preliminary injunction, defendants were not present, which plaintiff attributed to their repeatedly evading service. The trial court did not make any finding as to whether defendants had been dodging service, but it did find that plaintiff had exercised due diligence in attempting to serve them. The court emphasized the high bar that needed to be cleared to grant a preliminary injunction, but stated that it could consider and protect defendants' interests when ruling on the injunction, even in defendants' absence.

The trial court granted plaintiff a preliminary injunction, ordering as follows:

Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be preliminary enjoined and restrained from:

a. Using, disclosing, selling, or offering for sale, whether to the public or otherwise, the following:

i. Plaintiff's proprietary wiring harness;

ii. Plaintiff's proprietary battery selection switch box; and

iii. Plaintiff's proprietary fiberglass layup schedule[.]

Defendants then filed an answer, and Aquaform filed a counterclaim alleging breach of contract and tortious interference with contractual relations, and soon after filed a motion to set aside the preliminary injunction. On August 28, 2023, plaintiff filed its first motion to show cause why defendants should not be held in contempt for violating the preliminary injunction. After a hearing on the motions, the trial court denied defendants' request to set aside the preliminary injunction and for reconsideration, concluding that defendants were "not permitted in any way to advertise, promote, or anything the components that are at issue in this case or boats that have previously been manufactured with those components."

Also in August plaintiff served its first discovery requests on defendants. On September 25, 2023, the deadline for defendants' response, defendants served unsworn responses consisting of three documents, along with objections in response to every other request. On November 2, 2023, plaintiff filed a second motion to show cause why defendants should not be held in contempt.

---

[1] The boats plaintiff designed for defendants included three features that plaintiff considered its intellectual property and wished to protect: a "proprietary wiring harness," a "custom battery switching panel," and "a proprietary fiberglass layup schedule."

Plaintiff alleged that defendants had transferred 16 boats with the protected features to IMG Marine. At the hearing on the motion, the trial court ordered defendants to produce invoices and shipping documentation for those boats. The court expressed its strong preference to not resort to a default, but warned defendants that continuing to fail to produce requested documents would require the court to consider it. The trial court set December 15, 2023, as the deadline for information on the 16 boats. On December 7, 2023, plaintiff filed a motion to compel discovery, requesting answers to interrogatories and production of documents.

On December 15, 2023, defendants provided discovery related to the 16 boats, including a statement that 12 of those boats had been sold pursuant to "a verbal agreement around March 10, 2023." However, the attached documentation concerned only four boats, which indicated that they were shipped on September 5, 2023. On December 18, 2023, plaintiff filed a third motion to show cause why defendants should not be held in contempt. On January 4, 2024, the trial court again ordered defendants to produce outstanding documents, and to pay plaintiff $395 as a sanction. The parties presented to the trial court a proposed order requiring defendants to file supplemental discovery by February 2, 2024, and deposit $895,000 in escrow (the value of the 16 boats).

On January 25, 2024, plaintiff again filed a motion asking the trial court to find defendants in contempt. At the February 14 hearing on the motion, plaintiff's attorney requested an evidentiary hearing to determine if Greenwood should be held in criminal contempt. Defendants' attorney also requested a hearing, and acknowledged that defendants had not placed money in escrow, and had not provided information on the locations of some of the boats.

Citing MCR 2.313, the trial court found that defendants had repeatedly delayed discovery, provided incomplete information, not provided some information at all, and provided inaccurate information. The court further found that plaintiff often had to track down information itself, which then not only filled a gap that defendants could have easily filled, but at times also contradicted defendants' representations. The court additionally found that defendants had violated the preliminary injunction by selling boats with the subject features. The court described its past efforts of warnings and monetary sanctions as having failed to spur better discovery compliance. The court again expressed reluctance to order a default, but found it necessary because "[t]he deliberate and repeated failures by the Defendants constitute a flagrant and wanton refusal to facilitate in discovery, and were absolutely intentional." The trial court entered a default in favor of plaintiff, and found that the damages figure in the complaint had a "nexus [that] is sufficient and that amount is appropriate based on not only what's in the Complaint, but based on the various hearings that we've had." The trial court also awarded "reasonable attorney fees as part of the sanction in this case," ultimately awarding plaintiff $441,198.01 in damages, $173 in costs, and $49,370 in attorney fees.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"We review a trial court's decision whether to grant injunctive relief for an abuse of discretion." *Thermatool Corp v Borzym*, 227 Mich App 366, 372; 575 NW2d 334 (1998). "We review a trial court's decision regarding discovery sanctions for an abuse of discretion." *Swain v Morse*, 332 Mich App 510, 518 n 8; 957 NW2d 396 (2020). "A trial court's decision on whether

to conduct an evidentiary hearing is reviewed for an abuse of discretion." *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004). "The trial court abuses its discretion when its decision falls outside this range of principled outcomes." *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). "A trial court's factual findings are reviewed for clear error." *Swain*, 332 Mich App at 518 n 8.

## B. PRELIMINARY INJUNCTION

Defendants argue that the trial court abused its discretion by issuing the preliminary injunction.

"An injunction represents an extraordinary and drastic act of judicial power that should be employed sparingly and only with full conviction of its urgent necessity." *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 218 Mich App 263, 269; 553 NW2d 679 (1996). "A preliminary injunction is generally considered a form of equitable relief that has the objective of maintaining the status quo pending a final hearing concerning the parties' rights." *Slis v State*, 332 Mich App 312, 336; 956 NW2d 569 (2020). A party may seek an injunction to prevent "[a]ctual or threatened misappropriation" of a trade secret. MCL 445.1903(1). And "[i]f a secret *process* is involved, a plaintiff is entitled to the protection provided trade secrets, including an injunction." *Hayes-Albion v Kuberski*, 421 Mich 170, 184; 364 NW2d 609 (1984).

For three reasons, we conclude that the propriety of granting the preliminary injunction is of no consequence to the outcome of this appeal. First, even if the trial court abused its discretion in entering the preliminary injunction, defendants were obligated to follow that order until it was overturned or vacated. We said as much in *In re Contempt of Dudzinski*, 257 Mich App 96, 110; 667 NW2d 68 (2003), where we held, quoting *Kirby v Mich High School Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998), that " '[a] party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date.' " Hence, overturning the preliminary injunction on appeal would have no impact on whether the trial court abused its discretion in entering a default against defendants for violating that injunction (assuming that was the court's reason), because absent the injunction being vacated, defendants had to comply with its terms during the pendency of the trial court proceedings.

Second, any error in entering the preliminary injunction does not appear to have had an effect on the trial court proceedings. As we address below, defendants' discovery violations were the main focus of the default, and although the trial court cited defendants' violations of the preliminary injunction on the record, it did not clearly indicate that those violations factored into its decision to enter a default.

Third, challenges to the propriety of the preliminary injunction have been rendered moot. The parties agree that defendants no longer have any boats with the subject features for sale, and the preliminary injunction terminated after the trial court concluded the case with the default judgment (which did not incorporate the terms of the preliminary injunction). See *US Philips Corp v KBC Bank NV*, 590 F3d 1091, 1093-1094 (CA 9, 2010) ("A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves ipso facto when a final judgment is entered in the cause."). "This principle stems from the very purpose of

a preliminary injunction, which is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *Id*. at 1094. See also 42 Am Jur 2d, Injunctions, § 290 ("A temporary or preliminary injunction terminates or lapses when the court enters a final decree on the merits."). That is, of course, the same purpose of a preliminary injunction in Michigan. See *Slis*, 332 Mich App at 336-337. This Court cannot now fashion a remedy for an order that is no longer in effect. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief.").

## C. DEFAULT JUDGMENT

Defendants also argue that the trial court abused its discretion by entering a default judgment on the basis of discovery violations. "We review a trial court's decision to grant a default judgment for discovery abuses for an abuse of discretion." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 89; 618 NW2d 66 (2000).

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). The purpose of discovery is to simplify and clarify the issues. *Id*. "Thus, the rules should be construed in an effort to facilitate trial preparation and to further the ends of justice." *Id*.

MCR 2.313(B)(2) provides in pertinent part:

If a party or an officer, director, or managing agent of a party, . . . fails to obey an order to provide or permit discovery, including an order entered under subrule (A) of this rule or under MCR 2.311, the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

(a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party;

(d) in lieu of or in addition to the foregoing orders, an order treating as a contempt of court the failure to obey an order, except an order to submit to a physical or mental examination;

\* \* \*

-5-

In lieu of or in addition to the foregoing orders, the court may require the party failing to obey the order or the attorney advising the party, or both, to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

And MCR 2.313(C)(1) provides that if a party fails to disclose or supplement information, the trial court

> (a) may order payment of the reasonable expenses, including attorney fees, caused by the failure;

> (b) may inform the jury of the party's failure; and

> (c) may impose other appropriate sanctions, including any of the orders listed in MCR 2.313(B)(2)(a)-(c).

"Severe sanctions such as default or dismissal are predicated on a flagrant or wanton refusal to facilitate discovery that typically involves repeated violations of a court order." *Swain*, 332 Mich App at 518.

> When the sanction of a default judgment is contemplated, the trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether there was a court order directing discovery that has not been complied with, the amount of time that has elapsed between the violation and the motion for default judgment, and whether wilfulness has been shown. [*Frankenmuth Mut Ins Co v ACO, Inc*, 193 Mich App 389, 396-397; 484 NW2d 718 (1992).]

To justify a default judgment, "the failure must be conscious or intentional, not accidental or involuntary." *Id*. at 397.

At the default hearing, the trial court's primary focus was defendants' discovery conduct. It specifically cited MCR 2.313 which permits default as a discovery sanction, and articulated specific findings corresponding to all of the factors identified in *Frankenmuth Mut Ins Co*, 193 Mich App at 396-397. The court described the extended delays that had accompanied every discovery request, the multiple discovery orders with which defendants had failed to comply, the amount of time since the violations began, along with the lesser sanctions the court attempted before eventually and reluctantly turning to default, and found that that the failures were "deliberate[,] . . . flagrant and wanton . . . , and were absolutely intentional."

Each of the *Frankenmuth Mut Ins Co* factors favored the trial court's decision. The failures to respond to discovery requests extended over a substantial period, occurring from defendants' first discovery response on September 25, 2023, all the way to the decisive February 14, 2024 hearing. Defendants' failures at every stage of the discovery process continued for numerous

months.[2] That defendants eventually, after many motions and hearings, provided information that was requested long before did not excuse their failures to respond properly in the first instance. The trial court described defendants' repeated pattern as "waiting until the last possible minute," referencing its needing to order defendants to provide missing discovery, and, after major delays, plaintiffs ultimately obtaining the information it sought only by taking the initiative to resort to different channels. The trial court did not err in finding that this factor favored plaintiff.

Second, the trial court did not err in finding that defendants failed to comply with discovery orders. On November 27, 2023, the trial court ordered defendants to produce specified documents by December 15, 2023. Defendants then failed to provide much of the requested material, and the material it did provide contradicted the narrative it professed. For example, in the supplemental narrative defendants asserted that the sale of 12 boats with the subject features was not a violation of the injunction because it had occurred well before the preliminary injunction went into effect, but then the pertinent bill of lading indicated a date well after the injunction was in place. On January 4, 2024, the trial court ordered defendants to provide certain discovery material, and to pay costs and attorney fees for its attendant shortcomings, all to be completed within seven days. As the trial court found, defendants did not comply with any part of this order.

Third, the amount of time that had elapsed between the violation and the motion for default judgment indicated a lack of undue haste. As noted, defendants' discovery deficiencies began on September 25, 2023, and plaintiff filed its last request for default judgment on January 25, 2024. Although plaintiff first requested a default judgment earlier, the trial court previously (and appropriately) acknowledged the high bar required for that severe remedy, and gave defendants opportunities to improve their compliance. The motion for default judgment that the court did finally grant came several months after the problems had been ongoing. The trial court did not clearly err in finding that this factor favored plaintiff.

Fourth, defendants argue that they did not blatantly refuse to cooperate with discovery, and there were no repeated violations of court orders. See *Swain*, 332 Mich App at 518. Defendants emphasize the amount of material they did provide, and assert that they provided everything that was requested that they possessed. As we noted earlier, however, the trial court did not err in finding that defendants did violate two discovery orders. And our review of the record has brought to light no round of discovery that did not involve some major irregularity on defendants' part. Those constant problems led the trial court to reasonably conclude that defendants had been flagrantly holding up the discovery process to attempt to prolong the litigation. The trial court did not clearly err in finding that this factor favored plaintiff.

Fifth, contrary to defendants' argument, the trial court did carefully evaluate all options other than default on the record. See *Brenner v Kolk*, 226 Mich App 149, 163; 573 NW2d 65

---

[2] That the discovery violations occurred over a roughly six-month period may not seem at first blush to be an extended period, but given the entry of a preliminary injunction, the court and parties were presumably working under a shorter time frame. See MCR 3.310(A)(5).

(1997) (a court should not resort to "extreme" measures without considering less-drastic alternatives).

A review of the record establishes that the court's statements at the February 14 hearing, as well as in prior hearings, reflected its keen understanding that a default is a last resort. The court explained how it had given defendants more time on several occasions, yet had ended with "multiple findings previously that the Defendants failed to comply." The court elaborated:

> I have imposed a variety of sanctions such as requiring the Defendants to pay for the costs and attorney's fees. None of that has worked and we have gone through a long degree or level of attempts to try to gain compliance, and none of it has been successful. As such, the Court does believe that a default judgment is appropriate at this time.

As early as October 30, 2023, the trial court had been quite specific with defendants about how their discovery conduct was already a problem, and that, although it was resorting to other options at that time to try to encourage compliance, default would result from repeated violations.

Without elaboration, defendants state that the trial court should have evaluated the other options under MCR 2.313(B)(2)(a)-(d). Although defendants are correct that the trial court did not evaluate all of these possibilities on the record, subsection by subsection at the February 14, 2024 hearing, defendants do not offer searching analysis as to how any of the alternatives under MCR 2.313(B)(2) would have been more appropriate. Further, as just noted, the trial court did order defendants to pay expenses under MCR 2.313(B)(2), and later described how that approach was unsuccessful. And, the court specifically explained how it was acting to prevent defendants from wrongfully delaying the case, which plainly suggests that the option of staying the proceedings would actually have worked as a reward for defendants. For these reasons, we conclude that the trial court did attempt, and later considered, options other than default, and it did not appear to overlook any that would have been better suited to the occasion.

For these reasons, the trial court did not abuse its discretion by entering the default judgment.

## D.  EVIDENTIARY HEARING

Defendants also argue that the trial court found them in contempt without first holding a required evidentiary hearing. We disagree with the factual premise for this argument.

"Michigan courts of record have the inherent common-law right to punish all contempts of court." *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 499; 608 NW2d 105 (2000). See also MCL 600.1701(e) and (g). "Three sanctions are available to a court to remedy contemptuous behavior: (1) criminal punishment to vindicate the court's authority, (2) coercion, to force compliance with a court order, and (3) compensatory relief for the complainant." *In re Contempt of United Stationers Supply Co*, 239 Mich App at 499.

MCR 2.313(B)(2) provides in pertinent part that, when a party disobeys a discovery order, the trial court

may order such sanctions as are just, including, but not limited to the following:

\* \* \*

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party;

(d) in lieu of or in addition to the foregoing orders, an order treating as a contempt of court the failure to obey an order, except an order to submit to a physical or mental examination;

\* \* \*

In lieu of or in addition to the foregoing orders, the court may require the party failing to obey the order or the attorney advising the party, or both, to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

MCR 2.313(C)(1)(a) provides in pertinent part that if a party fails to disclose or supplement information, the trial court "may order payment of the reasonable expenses, including attorney fees, caused by the failure," and MCR 2.313(C)(1)(c) provides that the court "may impose other appropriate sanctions, including any of the orders listed in MCR 2.313(B)(2)(a)-(c)."

As noted, the trial court awarded plaintiff damages, costs, and attorney fees pursuant to its entry of a default against defendants. The court never used the word "contempt" when describing its decision, at either the hearing or in its judgment. Defendants' concerns about the procedural protections to which they were ostensibly entitled are all based on situations where a party is actually found in contempt. Defendants argue that a default ruling, or finding that a preliminary injunction was violated, necessarily means that a court is holding a party in contempt, but cite no authority for that proposition. We acknowledge that plaintiff requested both civil and criminal contempt findings, but also that the parties clearly requested an evidentiary hearing *if* the trial court were to consider criminal contempt. That the trial court then proceeded neither to hold such an evidentiary hearing, nor to describe any of its actions as based on contempt, clearly indicates that it was not finding defendants in criminal contempt. Indeed, the trial court went to its discussion of defendants' discovery sanctions, and the basis for a default, instead of examining criminal contempt standards.

To this point, the trial court explicitly referenced MCR 2.313 when describing the primary authority for the action it took, and MCR 2.313(B)(2)(c) directly allows for a default judgment. Further, MCR 2.313(B)(2) and MCR 2.313(C)(1)(a) authorize the imposition of attorney fees, again distinguishing contempt from an alternative sanction. Moreover, MCR 2.313(C)(1)(c), when setting the sanctions available for a failure to disclose or supplement, explicitly cuts the penalties off at MCR 2.313(B)(2)(c), which references default, as the harshest option, with no mention of

MCR 2.313(B)(2)(d), which references contempt. For these reasons, we conclude that the trial court resorted to default without needing or intending to resort to contempt.

Defendants' assertion that the trial court effectively found them guilty of criminal contempt is unconvincing. Defendants characterize the default as punishing them for past behavior instead of attempting to nudge them into compliance, which suggests criminal instead of civil contempt. See *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009). Defendants are correct that the trial court took that action in response to defendants' past behavior, but that is always the case when sanctioning a party for prior discovery violations. Nothing in the record shows that defendants were subjected to either form of contempt.

Affirmed. Plaintiff, having prevailed in full, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates